Robert M. EBERTING, Plaintiff-Appellant,

v.

Lois SKINNER, Defendant-Respondent.

No. 8152.

Springfield Court of Appeals.

Missouri.

Feb. 11, 1963.

Kelso Journey, Clinton, for plaintiff-appellant.

William J. Cason, Clinton, for defendant-respondent.

RUARK, Presiding Judge.

This is a suit for damages growing out of an automobile accident brought by Robert Eberting, appellant, against Lois Skinner, respondent. The appeal is from the order sustaining defendant's motion for summary judgment. The facts as they appear from those admitted in appellant's pleadings, defendant's unanswered request for admissions, and (principally) the deposition of the plaintiff, are as follows: On April 7, 1956, a collision occurred between automobiles driven by Eberting and Skinner. Eberting, an ex-sheriff, ex-deputy sheriff, and then Director of the Grain and Warehouse Division of the State of Missouri, was driving a state-owned car. He carried no personal liability insurance. As a consequence he became subject to the provisions of the Safety Responsibility Law (§ 303.060 RSMo, V.A.M.S., Laws 1953, p. 569, Laws 1957, p. 634) under which he was required to deposit security for the payment of any judgment which might be rendered for damages arising out of such accident and recovered in an action at law begun not later than one year after the date of such accident, or suffer suspension of his license and registration unless [§ 303.070(4)] " * * * there shall be filed with the director evidence satisfactory to him that the person who would otherwise be required to file security has been released from liability or been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments, with respect to all claims for injuries or damages resulting from the accident." See also § 303.140.

Eberting obtained a printed form from the Safety Responsibility Unit at Jefferson City, "—on account of my license was about to be revoked because it had not been sent in." He took that release and sent it to the M.F.A. office at Springfield. "They, in turn, got Mrs. Skinner's * * * signature on it." Then he took it to Jefferson City "personally." This "release" was as follows:

"DEPARTMENT OF REVENUE
STATE OF MISSOURI
Jefferson City

SAFETY RESPONSIBILITY LAW RELEASE

Case No. ————————————

Accident Date ————————————

Accident Location ————————————

TO – SAFETY RESPONSIBILITY UNIT
P. O. Box 506
Jefferson City, Missouri

The undersigned hereby certifies that he-she is of the age of 21 years or over and that he-she has released

Robert M. Eberting
_____
(fill in name and address of person released)

from all claims and causes of action of the undersigned arising from the above described accident, and authorized the Safety Responsibility Unit to accept this certificate as satisfactory evidence of such release from liability as required by the Safety Responsibility Law (Section 303.070(4) and 303.140(3), L.1953, H. B. 19).

Date _____

/s/ Lois Skinner
_____
(Signature of person giving release)

Rte # 5 Bolivar Mo.
_____
(Address of person giving release)

NOTE – The person giving the release must be the injured person or the owner of the damaged property.

STATE OF MISSOURI }
COUNTY OF GREENE } ss

On this 23rd day of May, 1956, ____Lois Skinner____ personally appeared
(Person giving release)
before me and acknowledged that the foregoing release was executed by him. her

/s/ Stanly Likins
_____
NOTARY PUBLIC

My commission expires  6–28–59

This form when properly filled out, signed and acknowledged, will be accepted by the Safety Responsibility Unit as satisfactory evidence of a release from liability under the Safety Responsibility Law, either prior to requirement of security or suspension, or for refund of security of termination of suspension if filed after deposit of security or effective date of suspension.

Form SR–15                                    Z–244"

The blanks in the upper right-hand corner in reference to case number, accident date, and accident location were filled in by Mr. Eberting. When he delivered this document to the Safety Responsibility Unit, he was informed that it would be necessary that he procure a release from Mrs. Skinner's husband. "* * * I got a notice from Mr. Cass stating my driver's license would be revoked on such and such a day if I didn't have a release from Mr. Skinner. I drove to Mrs. Skinner's home about 11:00 o'clock one night and just told her the situation, that they both had to send in a release, and I would like for them to do it. Her husband was out of the state at the time on a trucking mission, he was a truck driver. I asked her if she would take the release, have her husband sign it and send it to Mr. Cass, the Commissioner, at Jeff City, which she did." "Q. * * * So,

if I have it correct—if I haven't you set me right—the end result was two releases from the Skinners, at your request or direction, got to Jefferson City, one of them signed by Lois Skinner and the other by her husband, whatever his name was—Gene Skinner, is that correct? A. That's correct." The second instrument was in the same form as the first one. He said he had no conversation with Mrs. Skinner about a lawsuit and that his purpose in getting the release was to keep his driver's license and the right to operate a motor vehicle. "As I understand it, it was a release which took the place of a bond down at the Commissioner's office." "Q. But the release did undertake to release you from any liability to Mrs. Skinner on account of the accident, did it not? A. That's right."

On a date not shown Eberting gave to the Skinners' insurer a release as follows:

"RELEASE

For the Sole Consideration of Five Hundred Thirty three and 40/100 ($533.40) Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Gene & Lois Mae Skinner their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, none of whom admit any liability to the undersigned, but all expressly deny any liability from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person or property, which have resulted or may, in the future, develop from an accident which occurred on or about the    7    day of   April  , 1956, at or near    Highway 13; 8 mi South of Bolivar, Mo.

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned.

In Witness Whereof,    I    have hereunto set   my   hand and seal     this         day of                          , 1956.

                                        /s/ Robert M. Eberting            (Seal)
                                        Director of Grain & Warehouse (Seal) Div.
                                        K. C. Mo.

In the Presence of:
/s/   R. P. Docman
/s/   Kathy Hinkle
(9–50–3M)"

Four hundred eighty-three dollars of this amount was paid directly to the garage which repaired the car Eberting had been driving at the time of the collision. Fifty dollars of the amount was "for the use of my personal car while the car was being repaired." "They paid the repair of the car and also $50.00 for the use of my car while the car was, State car was being repaired." The fifty dollars went to Eberting's personal use. On June 12, 1956, a draft in the amount of fifty dollars was issued to Robert M. Eberting, Director of Grain and Warehouse Division, "IN FULL PAYMENT OF all claims arising out of the (accident?)." "Insured—Gene & Lois Mae Skinner"; "Date of loss—4–7–56." On the back of this draft was printed a release in full of all claims against all parties. Eberting signed or endorsed this check below such printed release but stated in his deposition that he didn't read the back of the draft.

The question which the parties present is whether or not, as a matter of law, the plaintiff-appellant has released the respondent. Appellant makes two points: I. That the "Safety Responsibility Release" was not a release but a mere statement of the defendant exonerating the plaintiff from all responsibility for the collision in question; and, II. The trial court erred in finding an accord and satisfaction.

A general idea of one of the principles involved (though the factual statement does not correspond) may be gathered from the first paragraph of 32 A.L.R.2d 937, Anno., as follows:

"Where one of the parties to an accident is charged with liability by the other, and settles or compromises the claim by making a payment and taking a release, it may plausibly be argued that he should not thereafter be permitted to bring an action on the theory that the other party was negligent and is therefore liable, since the previous settlement may be regarded as an ad-

mission of negligence on his own part. * * *"

Other statements which illustrate the rule are:

"* * * We consider the better rule to be that the making of the original settlement without any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims of the *immediate* parties to the settlement arising out of the same accident." Wm. H. Heinemann Creameries v. Milwaukee Auto. Ins. Co., 270 Wis. 443, 72 N.W.2d 102, at 103.

"It is logically and factually impossible to reconcile a valid claim by Kelleher with a valid claim by Lozzi. As Kelleher by her act acknowledged a valid claim by Lozzi and effected a settlement on that basis, we are brought to the conclusion that she estopped herself from taking the opposite position; * * *" Kelleher v. Lozzi, 7 N.J. 17, 80 A.2d 196 at 199.

"* * * This release of the plaintiffs by Jackson from all claims by him growing out of the collision and the payment of the $275 by the plaintiffs constituted a settlement of all claims between the parties growing out of the collision, the plaintiffs' claims against Jackson as well as Jackson's claims against the plaintiffs, * * *. Therefore, if Jackson was released from all liability growing out of the collision by virtue of the release and settlement, the defendants were necessarily released. * * *" Giles v. Smith, 80 Ga.App. 540, 56 S.E.2d 860 at 862.

See also the general review of this subject contained in Mensing v. Sturgeon, 250 Iowa 918, 97 N.W.2d 145.

In England v. Yellow Transit Co., 240 Mo.App. 968, 225 S.W.2d 366, it was held that the release of a cause of action, without taking into consideration the counter-

claim, estopped the releasee from proceeding with its claim on the counterclaim. The England case was recognized with approval and in fact quoted from by the Supreme Court in Max v. Spaeth, 349 S.W.2d 1, 4. It is also cited by the Supreme Court and the general principle was recognized in Faught v. Washam, 329 S.W.2d 588.[1]

As to whether the two papers filed with the Safety Responsibility Unit were releases, the plaintiff himself so considered them and in his testimony frequently referred to them as such. They contain the statement that the defendant *has* released him from all liability in respect to the collision. If a release actually had not been effected, then he was engaged in practicing a fraud upon the state. And can there be doubt that, had Mrs. Skinner chose to bring action against him for damages, he would have pleaded such instruments as a defense? For all practical purposes they were releases. However we think that the content of the instruments is not the most important thing. The whole transaction and the circumstances surrounding the affair must be taken into account. It is not essential that an express written instrument be used in order to accomplish an accord and satisfaction. It may be implied from the circumstances indicating the intention of the parties. 1 Am.Jur.2d, Accord and Satisfaction, § 2, p. 303; Hunt on Accord and Satisfaction, § 15, § 18; Brent v. Westerman, (W.D.Mo.), 123 F.Supp. 835(3). There must of course be a meeting of the minds,[2] and an intention to settle.[3] But while the matter of accord and satisfaction is ordinarily a question of intention, where the evidence is such as to admit of only one conclusion, the trial court is justified in determining it as a matter of law. The law will imply the intention from the acts of the parties. 1 Am.Jur.2d, Accord and Satisfaction, § 11, p. 309, et seq.; 1 C.J.S. Accord and Satisfaction § 49, p. 567. Appellant argues that an accord and satisfaction, being a contract, requires a consideration, and this, as a general statement, is true.[4] But ordinarily the courts are not concerned with the amount or quality of the consideration, 1 Am.Jur.2d, Accord and Satisfaction, § 13, p. 311; Duncan v. Black, Mo.App., 324 S.W.2d 483, and the consideration may consist of forbearance or some detriment suffered. 75 C.J.S. Release §§ 12, 16, pp. 635, 637. There was consideration moving from the releasor to the releasee in that she was giving up her right of action against the releasee; or if it be argued that she had not released Eberting, she at least changed her position to her detriment; for, since he had no liability insurance, it would have been to her advantage to have on deposit security available to pay any judgment which she might obtain. She had the right to institute an action immediately and this very act would have impounded the security until the action was terminated. This giving up and forbearance on her part was a benefit to the appellant. On the other hand, this "giving up" on her part also accomplished a benefit going from the appel-

1. Other cases which by implication at least accept or recognize one or more facets of the principle are: Keller v. Keklikian, 362 Mo. 919, 244 S.W.2d 1001; Burnham v. Williams, 198 Mo.App. 18, 194 S.W. 751, 752; Klotz v. Lee, 36 N.J. Super. 6, 114 A.2d 746, 748; Graves Truck Line v. Home Oil Co., 181 Kan. 507, 312 P.2d 1079, 1081; Foremost Dairies v. Campbell Coal Co., Ga.App., 196 S.E. 279; U. S. A. C. Transport v. Corley (5th Cir.), 202 F.2d 8; Fikes v. Johnson, 220 Ark. 448, 248 S.W.2d 362; Tompkins Motor Lines v. Georgia Broilers, (5th Cir.), 260 F.2d 830.

2. State ex rel. St. Louis Car Co. v. Hughes, 348 Mo. 125, 152 S.W.2d 193; Dobbins v. City Bond & Mortgage Co., Mo.App., 116 S.W.2d 200, aff. 343 Mo. 1001, 124 S.W.2d 1111; Shofler v. Jordan, Mo.App., 284 S.W.2d 612.

3. 1 C.J.S. Accord and Satisfaction § 6, p. 477; 15 C.J.S. Compromise and Settlement § 25, p. 744; Aldridge v. Shelton's Estate, Mo.App., 86 S.W.2d 395, 399; Bohle v. Sternfels, Mo., 261 S.W.2d 936.

4. Corbin on Contracts, § 1278; 76 C.J.S. Release § 10, p. 633; Green v. Baum, Mo.App., 132 S.W.2d 655.

lant unto her. Had she refused to release him from the obligation (imposed by law) to deposit security, there could have been an inducement on the part of Eberting to bring action against her at once in order to get the question of liability settled. Presumably it was to her benefit that such action should not be taken and that the matter be settled. The law favors compromises and settlements.

■ In situations of this kind the courts have frequently applied the principles of equitable estoppel. Thus, in the England case, supra, 240 Mo.App. 968, 225 S.W.2d 366, the court held the releasee was *estopped* by the conduct and actions of the parties under the circumstances shown. The principles of estoppel were applied (although the word "estoppel" is not always used) in the majority of the foreign cases cited herein. In this instance the appellant, for his own benefit, induced the respondent to change her position to her detriment. Following the idea first presented in 1857 (see Kelleher v. Lozzi, 7 N.J. 17, 80 A.2d 196, 199), he cannot now take the shield which she has handed him and use it as a sword against her.

The judgment is affirmed.

STONE, J., concurs.