Donald Lee **LUGENA**, Appellant,

v.

Marilyn C. **HANNA**, Respondent.

No. 52674.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1967.

Larry M. Woods, Columbia, Sapp, Woods & Dannov, Columbia, of counsel, for appellant.

Howard F. Major, W. Hampton Ford, Ronald A. Graves, Columbia, for respondent.

ELGIN T. FULLER, Special Judge.

This is a suit for damages growing out of an automobile accident in Columbia, Missouri, brought by Donald Lee Lugena, Appellant, against Marilyn C. Hanna, Respondent. The appeal is from an order sustaining defendant's motion for summary judgment.

The facts as they appear from the pleadings, depositions of plaintiff and defendant, the depositions of witnesses Chiles Richard and Vern L. Nesheim, adjuster for MFA Insurance Company, plaintiff's response to defendant's motion for summary judgment and the affidavit of plaintiff, are as follows: On September 3, 1965, a collision occurred between automobiles driven by Donald Lee Lugena and Marilyn C. Hanna. At the time of this collision defendant was traveling north on Ripley Street and plaintiff was westbound on Walnut Street. There is a stop sign at the southeast corner of the intersection of Walnut and Ripley Streets, Walnut being a through street, and traffic on Ripley being required to stop before entering Walnut. The defendant did not stop before entering Walnut Street. She did not see plaintiff's vehicle before the impact and didn't recall looking to the east to see if there was an automobile coming toward the west. Later defendant entered a plea of guilty to careless and imprudent driving. Defendant did not recall but did not deny saying to plaintiff after the collision, "It was all my fault and I will take all responsibility for it." On the other hand, plaintiff, Lugena, first saw the Hanna auto-

mobile when the Hanna car was only two feet from the left side of his automobile. Plaintiff could not say whether he looked to the south on Ripley Street before entering the intersection. He didn't sound the horn and did not recall applying his brakes. Both cars were traveling 25 or 30 miles per hour. Nothing obstructed the view of either driver.

Lugena carried no personal liability insurance and was, therefore, subject to the provisions of the Safety Responsibility Law (§§ 303.030, 303.060, RSMo 1959, V.A.M.S.), under which he was required to deposit security for the payment of any judgment which might be rendered against him for damages arising out of such accident and recovered in an action at law begun not later than one year after the date of the accident, or suffer suspension of his license unless (§ 303.070(4)) "* * * there shall be filed with the director evidence satisfactory to him that the person who would otherwise be required to file security has been released from liability or been finally adjudicated not to be liable or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments, with respect to all claims for injuries or damages resulting from the accident." See also § 303.140 (3).

After such accident was reported in writing to the Director of Revenue, Lugena was advised by the Director that if he did not obtain a release from Hanna or deposit security of a certain amount, his chauffeur's license would be suspended. Upon receipt of this rather sad and jolting communication Lugena consulted his attorney. Lugena stated that his attorney gave him a release form. Lugena then went to Marilyn Hanna's home. He told her that he was a truck driver and earned his living by driving a truck and that his chauffeur's license was going to be taken away unless she signed the release which he had with him; that he needed the signed release to keep his license. Miss Hanna told Lugena that she would take the release to her insurance company and would do what it told her to do. She talked with the claim adjuster of her company, who told her that it was all right for her to sign the release. The release was signed by defendant Hanna November 2, 1965. She then delivered it to the wife of Lugena, plaintiff Lugena being absent from his home at the time. Lugena paid no money to Hanna for the executed release. The release was on the form provided by the Department of Revenue, designated "Safety Responsibility Law Release." Omitting certain identifying data, the release is as follows:

"The undersigned hereby certifies that he-she is of the age of 21 years or over and that he-she has released Donald Lee Lugena and Anita L. Lugena from all claims and causes of action of the undersigned arising from the above described accident, and authorizes the Safety Responsibility Unit to accept this certificate as satisfactory evidence of such release from liability as required by the Safety Responsibility Law. (Section 303.070(4) and 303.140(3), L. 1953, H.B. 19)

Date Nov. 2, 1965

Marilyn Hanna

(Signature of person giving release.)

R 6 Columbia, Mo.

(Address of persons giving release.)"

The release was acknowledged November 2, 1965, before a notary public.

After plaintiff obtained the release from defendant Hanna he then filed his petition against her for personal injuries, medical and hospital expense, lost wages and property damaged for $17,000.00. The petition was filed December 11, 1965. The defendant's answer, after pleading contributory negligence of plaintiff, pleads the executed release as a bar to plaintiff's action and pleads that because of the release plaintiff is estopped from maintaining such cause of

action. Thereafter, the defendant filed her motion for summary judgment, to which the plaintiff filed his response and affidavit. Defendant's motion for summary judgment was sustained.

The question presented by this appeal is whether or not, as a matter of law, the plaintiff's obtaining the release from the defendant constitutes conduct which estops plaintiff from prosecuting the instant action.

Appellant claims error in the trial court's sustaining the motion for summary judgment. He makes three points:

First, there was no consideration to the defendant for the execution of the release and that defendant did not give up any right of action or change her position to her detriment because she had no cause of action against plaintiff anyway.

Second, the motion for summary judgment should not have been sustained for the reason there was a genuine issue of fact as to whether there was an accord and satisfaction by the execution and delivery of the release because the intention of the parties is a necessary element, and therefore there was a factual question as to the intention of the parties at the time of the release; and

Third, plaintiff is not estopped from prosecution of his cause of action against the defendant because defendant was not misled into signing the release and for the reason that she suffered no injury thereby.

■■■ Considering first the question of consideration for the release, it is true that Lugena did not pay any money to Miss Hanna. But in executing and delivering the release to plaintiff the defendant did change her position to her detriment. Plaintiff contends that the depositions show that she could not have made a submissible case as to plaintiff's contributory negligence or, in the event of a counterclaim, she could not have made a submissible case either as to plaintiff's primary or humanitarian negligence. A determination of those matters

is not necessary. She had a right to *assert* such a defense or claim until the time she signed the release. It was at least possible for her to have successfully contended that plaintiff should have seen her in time to have sounded a warning and thereby avoided the accident. Consideration may consist of forbearance or some detriment. 76 C.J.S. Release §§ 12, 16, pp. 635, 637. When the plaintiff obtained the release from defendant he placed the defendant in the position of a prizefighter who must fight only by parrying the blows aimed at him, but is not permitted to strike back. Miss Hanna must remain in the outfield at all times, with never a turn at bat or an opportunity to make a score. The best she could possibly hope for would be a scoreless tie. This giving up and forbearance was a benefit to the appellant. The appellant, for his own benefit, sought out the defendant and induced her to sign the safety responsibility release. He knew that if defendant executed the release he, Lugena, would be releasing the defendant. In Lugena's deposition he was asked what he understood as to the legal effect of Miss Hanna's giving him a release, and his reply was: "That if she signed the release for me that I would * * that the insurance company would also say that that released them, at the same time." The conclusion is inescapable that at the time the release was executed the plaintiff was willing to settle the entire matter without reserving the right for him to proceed against the defendant. The plaintiff-appellant did not provide for the reservation of a right to pursue his claim against Miss Hanna. Had he done so his right thereafter to proceed against respondent would be protected. Pierson v. Allen, Mo., 409 S.W. 2d 127. In his deposition Lugena was asked, "Well, was it more important to you to have the release executed than to preserve any claim you might have?" To which he answered, "At the time, yes. I had to provide for my family."

The argument now advanced by plaintiff Lugena as to there being no consideration for the release was also urged in Eberting

v. Skinner, Mo.App., 364 S.W.2d 829. That case involved a safety responsibility law release and the sustaining of a motion for summary judgment. The court rejected the plaintiff's contention that there was no consideration, and at page 834 stated: "But ordinarily the courts are not concerned with the amount or quality of the consideration. 1 Am.Jur.2d, Accord and Satisfaction, § 13, p. 311; Duncan v. Black, Mo.App., 324 S.W. 2d 483, and the consideration may consist of forbearance or some detriment suffered. 76 C.J.S. Release §§ 12, 16, pp. 635, 637. There was consideration moving from the releasor to the releasee in that she was giving up her right of action against the releasee; or if it be argued that she had not released Eberting, she at least changed her position to her detriment; for, since he had no liability insurance, it would have been to her advantage to have on deposit security available to pay any judgment which she might obtain. She had the right to institute an action immediately and this very act would have impounded the security until the action was terminated. This giving up and forbearance on her part was a benefit to the appellant."

We hold in this case that the release was supported by sufficient consideration, and that it is not essential that money be paid for a release.

■ Appellant's second point is that there was a genuine issue of fact as to whether there was an accord and satisfaction which depends on the intention of the parties at the time of execution of the release, and that, therefore, there being an issue of fact, it was error to sustain the motion for a summary judgment.

A similar claim was made in Farmer v. Arnold, Mo., 371 S.W.2d 265, which involved a release under the Safety Responsibility Law and the granting of a summary judgment. Plaintiff Farmer appealed asserting, among other reasons, that there was a genuinely controverted issue of fact to be determined and that

therefore the remedy of summary judgment was not appropriate. As in the instant case plaintiff claimed that the release was obtained by him for the sole and specific purpose of complying with the safety responsibility law so as to avoid the loss of his driving privileges. He claimed that immediately after the accident he and the driver of the other car entered into an oral agreement "whereby each agreed to pay the other for his damages;" that the actual terms of this agreement was a question of fact for a jury's determination and made the summary judgment procedure inapplicable. That was a stronger case, for the releasee claimed a separate, oral agreement. This court, in holding that because Farmer instigated the execution of the release he was estopped from prosecuting a suit against Arnold, said at page 269: "* * * whatever the parties may have thought or intended when the plaintiff Farmer paid Arnold $50 for a release, and regardless of whether the release constituted the entire contract, the release was executed at the instigation of Farmer for his own immediate needs and benefit and he is now estopped after rendering Arnold all but defenseless from prosecuting one side of a tort action arising out of a single transaction."

Plaintiff Lugena does not claim that a separate oral agreement was made at the time the release was signed. He merely makes the claim that the only reason defendant Hanna signed the release was to allow plaintiff to retain his chauffeur's license, and that there was no intention to prevent his suing her at a later date. The depositions indicate that that contention is nothing more than a hope on appellant's part. How could it be said that there was an intention on the part of the parties to reserve the right of plaintiff to prosecute his claim against Hanna when no written reservation of such right was included in the release? Plaintiff never asked the defendant to execute an agreement giving him that right; nor does the record show that plaintiff ever requested the de-

fendant to consider such an agreement. The record shows that defendant signed the release so that plaintiff would not lose his driving license. Her deposition shows the following: "* * * and I was willing to sign it so he could have his driver's license." And in answer to the question, "And was that the only purpose for which you signed it?" she answered, "So he could keep his driver's license, yes." There is nothing in those circumstances to show an intention of defendant to authorize a later claim by plaintiff against her.

The release in this case was, for all practical purposes, a general release. While it is true that the intention of the parties to a release, like all contracts, is the ultimate test of such contract, the secret intention of one of the parties, like unilateral mistake in or ignorance of the legal effect of a release or contract is of no consequence. Sosa v. Velvet Dairy Stores, Inc., Mo.App., 407 S.W.2d 615. "Stated otherwise, the intention of the parties as evidenced by the legal import of the language of a valid written contract cannot ordinarily be varied by parol proof of a different intention." 30 Am.Jur.2d, Evidence, § 1016, p. 149. Nor can its legal effect be contradicted or varied by parol or extrinsic evidence. As stated in 32A C.J.S. Evidence § 852, p. 220: "The legal effect of a written instrument, even though not apparent from the terms of the instrument itself, but left to be implied by law, can no more be contradicted, defeated, modified, varied, explained, or controlled by parol or extrinsic evidence than if such effect had been expressed * * *."

We find no genuine issue of fact which would make the summary judgment procedure inapplicable.

The last contention of plaintiff that he was not "equitably estopped because defendant was not misled into signing the release and for the reason that she suffered no injury," is not too clear. Neither the plaintiff nor the defendant was misled. Plaintiff knew that he wanted a signed release to protect his driving privilege. Defendant Hanna knew that Lugena was likely to lose his chauffeur's license if she did not sign the release. The question of either party being misled as to the actual execution of the release is not involved in this case. What we have heretofore said as to the injury or detriment to defendant Hanna by her execution of the release is sufficient.

The legal effect of a release has been before the appellate courts of this state on several occasions. In England v. Yellow Transit Co., 240 Mo.App. 968, 225 S.W.2d 366, the defendant Yellow Transit Company obtained a release from the plaintiff upon the payment of $500.00. It failed to expressly reserve its right to prosecute its counterclaim against the plaintiff. Although its counterclaim had been filed prior to dismissal of plaintiff's petition and the execution of the release by the plaintiff, Yellow Transit's failure to specifically reserve its claim was held to be one of the circumstances estopping it from the right to pursue its claim.

Again, in Eberting v. Skinner, supra, the court, under similar facts to those in the instant case, decided that the releasee was estopped from proceeding with his cause of action against the releasor. Farmer v. Arnold, supra, reaches the same conclusion.

Fortunately, we think, for the reputation of the law for fairness, the authorities in other jurisdictions hold that, under similar circumstances, the releasee's cause of action is barred and he is estopped from proceeding against the releasor after execution of a release. Heinemann Creameries, Inc. v. Milwaukee Automobile Ins. Co., 270 Wis. 443, 71 N.W.2d 395; Kelleher v. Lozzi, 7 N.J. 17, 80 A.2d 196; Giles v. Smith, 80 Ga.App. 540, 56 S.E.2d 860; and Mensing v. Sturgeon, 250 Iowa, 918, 97 N.W.2d 145, at page 150, wherein the Supreme Court of Iowa stated: "'We consider the better rule to be that the mak-

ing of the original settlement without any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims of the immediate parties arising out of the same accident.' "

 Some of the cases decide the issue presented in this case on the theory of estoppel, estoppel in pais, equitable estoppel, waiver, accord and satisfaction, or estoppel by misrepresentation. But by whatever name used in the opinions, all are based on the principle that where one of the parties to an accident is charged with liability by the other, and settles the claim or takes a release, he should not thereafter be permitted to bring or pursue his action on the theory that the other party was negligent and therefore liable, since the settlement or the taking of a release may be regarded as an expressed or implied admission of negligence on his part, and that the taking of a release without a reservation of right in the releasee to make a claim against the releasor constitutes an accord and satisfaction of all claims of the parties to the settlement arising out of the same accident, and the releasee is estopped from so doing. Generally a party will not be permitted to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him. In the absence of words in the operative part of a general release which indicate an intention to limit or restrict its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties to the release. That is estoppel in its purest form, for estoppel rests simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another. The situation here is very similar to that in those cases where a party seeks to accept the benefits of a contract, but to reject all or a part of its burdens. As said in Eberting v. Skinner, "he cannot now take the shield which she has

handed him and use it as a sword against her."

The judgment is affirmed.

FINCH, P. J., and DONNELLY and EAGER, JJ., concur.