**Dudley GLEASON, Appellant,**

v.

**AVON PRODUCTS, INC. and James Preston, President of Avon Division of Avon Products, Inc., Appellee.**

No. 87–1554.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1988.

Decided June 24, 1988.

Stephen G. Mirakian, Kansas City, Mo., for appellant.

W. Perry Brandt, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Dudley Gleason brought this diversity action against his longtime employer, Avon Products, claiming that he was forced to retire and thus was wrongfully discharged, and that promissory estoppel barred his termination. The district court, looking particularly to a letter agreement which Gleason signed and his acceptance of the substantial benefits set forth in the letter, granted Avon's motion for summary judgment, ruling that the parties had reached an accord and satisfaction. Gleason appeals and argues that a genuine issue of material fact exists regarding his intentions in retiring from Avon on August 31, 1983, and accepting retirement benefits thereafter, barring entry of summary judgment in favor of Avon. Fed.R.Civ.P. 56(c). We are satisfied that the district court did not err in ruling that Gleason's intent to settle his dispute with Avon should be inferred as a matter of law, and we accordingly affirm the judgment of the district court.

As this is an appeal from summary judgment, we state the facts as we glean them from the affidavits, documents, and depositions in the record before the district court in the light most favorable to Gleason, giving him the benefit of all inferences which may reasonably be drawn from the facts. *See Mandel v. United States,* 719 F.2d 963, 965 (8th Cir.1983).

Gleason began working for Avon in 1956, and when he retired in 1983 Gleason had been General Manager of Avon's Kansas City branch for approximately ten years. Early in 1978, Gleason informally began to discuss his retirement plans with higher-level Avon management, as he would soon qualify for full retirement benefits and would reach age 65 in November, 1983. Sixty-five was then the standard age for retirement from Avon.

In September of 1978, Avon distributed a memorandum from J.A. Wakefield, Vice President of Personnel Services, to all general managers, including Gleason. The memorandum outlined changes in Avon's retirement policy and requested the general managers to inform their management employees of these changes. The memorandum stated that "[s]tarting with employees whose normal retirement would begin on or after 1/1/79, the date of retirement will be at the employee's option." The memorandum further stated that Avon "will have no mandatory retirement age," but will assume that employees "will continue to retire by age 65 unless they indicate a desire to retire later." Subsequent bulletins set out procedures for implementing these changes.

Through late 1982, Gleason continued to discuss his retirement plans informally with various Avon officers and directors, including Paul Markovits, Vice President for Branch Operations, and William Chaney, President. On several occasions, Gleason informed Markovits and others that he did not believe he would be financially able to retire at age 65, and that he would probably need to work for several years beyond that age to retire comfortably. Gleason claims that none of the Avon officers and directors he spoke with during this period suggested or implied that he could not work beyond age 65, and that in November, 1981, Chaney specifically told Gleason "you can work as long as you want to." Gleason alleges that in reliance upon Chaney's statement and the representations contained in the Wakefield memorandum, he did not change his investments or restrict his expenditures to account for an early retirement.

In 1982, at Markovits' suggestion and Avon's expense, Gleason consulted a financial advisor who informed him that he should continue working beyond age 65 to obtain the retirement benefits he desired. Following this consultation, in late 1982 or early 1983, Gleason informed Markovits in writing that subject to senior management approval, he wanted to continue working until June 30, 1987, when he would reach the age of 68½ years. Markovits communicated Gleason's request to James Preston, who had succeeded Chaney as President of Avon.

On February 11, 1983, Markovits and Preston met with Gleason and informed him that Avon "would not be able to honor [his] request * * * for extending his career beyond the end of 1983." Gleason has alleged that Preston also told him this decision was irrevocable.

Avon later informed Gleason that he could choose to stop working in August rather than December, 1983, without loss of pay through December, and Gleason then decided to retire effective August 31, 1983. On June 24, 1983, Markovits sent Gleason a letter confirming "the arrangement we recently discussed." Markovits' letter stated that Gleason would retire on August 31, 1983, and outlined the benefits he would receive: a lump-sum pension payment; regular pay through December, 1983; a supplemental payment for six additional months' salary, a five-week vacation, and a 1983 incentive bonus; medical insurance; and $10,000 life insurance.

Further discussions about Gleason's retirement benefits ensued. On August 25, 1983, Markovits sent Gleason a second letter to confirm "the arrangement we recently discussed." This letter again recited

that Gleason would retire on August 31, 1983, and outlined a revised and substantially enhanced package of retirement benefits. In addition to Gleason's pension, medical insurance and $10,000 life insurance, Gleason would receive a $127,300 interest-free, seven-year loan representing the balance of his 1983 salary, 85% of his 1983 incentive bonus, a portion of his 1983 Christmas gift, and 31 weeks' salary for 1984, including vacation. Avon would also provide a separate check for $25,418 so that Gleason could discharge a loan incurred to purchase Avon stock; pay the balance of Gleason's home mortgage, $40,-776.88, which Gleason was to reimburse upon sale of the house; and provide an additional $250,000 whole life insurance, contingent upon a physical examination.

The letter requested that Gleason "[p]lease sign and return the duplicate copy * * * to indicate your agreement to the points set forth above." The letter further stated that "our intent is to insure that we live up to each element of this agreement to the fullest extent." Gleason signed and returned the letter, adding: "The retirement provisions outlined in this letter are in total agreement with those outlined to me by the management of Avon." Gleason retired on August 31, 1983, and Avon has paid all benefits outlined in Markovits' August 25, 1983 letter.

On June 18, 1985, Gleason filed this diversity action, alleging that Avon had wrongfully discharged him and that the doctrine of promissory estoppel barred his discharge under Missouri law.[1] Gleason's claims were based primarily on the Wakefield memorandum and then-President Chaney's statement that Gleason could work as long as he chose. Avon moved for summary judgment, primarily arguing that the parties had reached an accord and satisfaction of Gleason's claims. Gleason filed a response and cross-motion for summary judgment, arguing that Avon's retirement policies, particularly as set forth in the Wakefield memorandum, constituted an en-

forceable employment contract. The district court denied Gleason's motion and granted Avon's, ruling as a matter of law that the parties had reached an accord and satisfaction of Gleason's retirement dispute. *Gleason v. Avon Products, Inc.,* No. 85–0709–CV–W–6 (W.D.Mo. Dec. 17, 1986).

On appeal Gleason argues that the judgment of the district court should be reversed because a factual issue exists regarding his intention in signing Markovits' August 25, 1983 letter; in retiring on August 31, 1983; and in accepting the benefits outlined in Markovits' letter. Fed.R.Civ.P. 56(c). He claims that his retirement was involuntary; that Markovits' letter did not condition the receipt of benefits on a release of claims; and that his signature of the letter, with the accompanying statement, indicates only that the outlined benefits correspond with those offered by Avon, not that he agreed to accept them as a condition of retirement. Gleason also argues that his prompt action in pursuing this suit demonstrates that he never intended to release his claims.

The principles governing our review are summarized in *Mandel v. United States:*

> In reviewing a district court decision granting a motion for summary judgment, we apply the same standard as the trial court. * * * Summary judgment should be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. * * * Summary judgment is an extreme remedy and is not to be granted unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances.

719 F.2d at 965 (citations omitted).

Under Missouri law, an accord and satisfaction must meet the basic requirements of a simple contract, *Alaska Fed. Sav. & Loan Ass'n v. Hoffman,* 485 S.W.2d 118,

---

1. Gleason's complaint also alleged a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982); one count of tortious interference with economic expectancy; and one count of tortious interference with contract and business expectancy by Preston. These counts were dismissed without prejudice by stipulation of the parties.

123 (Mo.App.1972), and a party is bound "only by a well-understood and concluded agreement to settle all demands in dispute." *Penney v. White,* 594 S.W.2d 632, 636 (Mo.App.1980). "The contract hinges primarily on the matter of intention," and if the facts regarding intention are in dispute, they must be determined by a jury. *Hoffman,* 485 S.W.2d at 123. However, "where the evidence is such as to admit of only one conclusion, the trial court is justified in determining it as a matter of law." *Eberting v. Skinner,* 364 S.W.2d 829, 834 (Mo.App.1963). In such cases, "[t]he law will imply the intention from the acts of the parties," *id.,* and their "secret intentions" are not relevant. *See Bestor v. American Nat'l Stores,* 691 S.W.2d 384, 388 (Mo.App. 1985).

Applying these principles, the district court first determined that Markovits' August 25, 1983 letter "leaves no reasonable doubt as to [Avon's] intention to reach an 'arrangement' dispositive of the rights of the parties." *Gleason v. Avon Products,* slip op. at 15. The letter recites Gleason's retirement date and the benefits he is to receive under "the arrangement we recently discussed," and requests that Gleason sign and return the duplicate "to indicate your agreement to the points set forth above." The letter closes with a statement that it is Avon's intent to "live up to each element of this agreement to the fullest extent." The district court did not err in ruling that Avon's intent to settle Gleason's retirement dispute should be inferred as a matter of law from these statements. Gleason has not alleged that any Avon officer or director made a contrary statement after August 25, 1983. *Cf. Henderson v. Eagle Express Co.,* 483 S.W. 2d 767, 768–69 (Mo..App.1972) (defendant made statement withdrawing condition that check be accepted in full satisfaction). Markovits' letter plainly sets forth the terms of an "arrangement" or "agreement" between Gleason and Avon encompassing both Gleason's retirement date and his retirement benefits. There is no merit in Gleason's argument that the letter was so skillfully drafted as to conceal this con-

sequence from him or to create a genuine factual issue as to Avon's intent.

The district court then determined that Gleason should be deemed to have accepted Avon's offer as a matter of law because he signed and returned Markovits' August 25, 1983 letter and accepted the benefits it outlined. The district court determined that under Missouri law, even a forced resignation is not inconsistent with a binding settlement of an employment controversy, *see Anselmo v. Manufacturers Life Ins.,* 595 F.Supp. 541, 549–51 (W.D.Mo. 1984), and that the necessary intention to settle may be inferred as a matter of law when a party accepts a benefit intended to resolve a dispute, even under words of protest. *Milgram Food Stores v. Gelco Corp.,* 550 F.Supp. 992, 996–97 (W.D.Mo. 1982) (quoting *Henderson,* 483 S.W.2d at 768). The district court therefore rejected Gleason's arguments that his alleged forced retirement or the statement accompanying his signature of Markovits' letter created a genuine factual issue regarding his intent. The court also ruled that the statements in Gleason's affidavits regarding his at best secret intentions not to enter into a voluntary retirement agreement or a settlement of his claims with Avon were insufficient as a matter of law to bar entry of judgment against him. *See Bestor,* 691 S.W.2d at 388; *Eberting,* 364 S.W.2d at 834.

We accord great weight to a federal district court's interpretation of state law. *Pyle v. Dow Chemical Co.,* 728 F.2d 1129, 1130 (8th Cir.1984). We are satisfied that the district court did not err in concluding that Gleason's intent to settle his retirement dispute with Avon should be inferred from his actions as a matter of law. Even if we assume that Gleason was forced to resign and that the statement accompanying his signature of Markovits' letter was not meant to signal his agreement with the outlined arrangement, his undisputed acceptance of the retirement benefits offered by Avon with the plain intention of settling the dispute was sufficient to justify the district court's ruling. *See Anselmo,* 595 F.Supp. at 549–51; *Milgram Food Stores,* 550 F.Supp. at 996–97. In this regard,

Gleason's later decision to pursue this lawsuit is not material.

We affirm the district court's order granting Avon's motion for summary judgment on the ground that the parties have reached an accord and satisfaction of Gleason's claims as a matter of law. It is therefore unnecessary to consider whether the district court erred in denying Gleason's cross-motion for summary judgment on the contractual effect of Avon's retirement policies.

The judgment of the district court is affirmed.