Joseph VIDACAK, Jr., Plaintiff,

v.

OKLAHOMA FARMERS UNION MUTUAL INSURANCE CO., and John Doe, Defendants,

and

Luann P. Gregory–Cory and Celadon Trucking Services, Inc., Defendants/Third Party Plaintiffs/ Appellants,

v.

Joseph Vidacak, Sr., Third Party Defendant/Respondent.

No. 28844.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 22, 2008.

Application for Transfer Denied Nov. 13, 2008.

Application for Transfer Denied March 31, 2009.

Deborah K. Dodge, Hall, Ansley, Rogers & Sweeney, P.C., Springfield, MO, for appellants.

Jeffrey S. Monroe, Spencer, Scott & Dwyer, P.C., Joplin, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Luann P. Gregory–Cory and Celadon Trucking Services, Inc. ("Appellants"), appeal from a grant of summary judgment in favor of Joseph Vidacak, Sr. ("Respondent"), on their third-party petition for contribution against Respondent. Appellants contend that the trial court erred in granting summary judgment because the release and indemnity agreement ("Release") executed by Respondent and his wife[1] in another action released only claims brought by Respondent and his wife against Appellants, but not claims by Appellants against Respondent. We agree and reverse and remand for further proceedings.

### Factual and Procedural Background

On January 18, 2002, Luann P. Gregory–Cory was driving a tractor trailer unit belonging to Celadon Trucking Services, Inc., along Interstate 44 in Webster County, Missouri. Respondent was driving an automobile immediately behind the tractor trailer, and Respondent's wife and son were passengers in that car. A third vehicle was traveling directly in front of the tractor trailer. When that vehicle slowed or stopped suddenly, the tractor trailer jack-knifed, and Respondent's vehicle collided with the tractor trailer.

The following year, Respondent and his wife filed suit against Appellants seeking damages for personal injuries, and Respondent further sought damages for loss of consortium. At some point thereafter, Respondent voluntarily dismissed his claims, and the case was settled in April 2006 and dismissed with prejudice. In settling that case, Respondent and his wife executed the Release at issue in this appeal.

In January 2007, Respondent's son filed a separate action against Appellants, seeking damages for personal injuries arising from the same accident. Appellants responded by alleging that the accident was, at least in part, caused by Respondent's

---

1. The indemnity provision in this agreement is only between Respondent's wife and Appellants.

negligence and subsequently filed a third-party petition against Respondent seeking contribution. Respondent, in his answer to Appellants' third-party claim against him, asserted as an affirmative defense that the Release served to bar Appellants from seeking contribution or damages from him. In August of 2007, Respondent filed a motion for summary judgment arguing that Appellants should, as a matter of law, be estopped from maintaining their action against him. Respondent relied exclusively on *Steve Spicer Motors, Inc. v. Gilliam*, 19 S.W.3d 153 (Mo.App.2000), in arguing his estoppel claim. The trial court granted Respondent's motion, specifically relying on the holding in *Spicer*, and made an express determination pursuant to Rule 74.01(b) that there was no just reason for delay thereby rendering the judgment final for purposes of appeal.[2] This appeal followed.

### II. Standard of Review

Summary judgment is governed by Rule 74.04, which provides in relevant part that, "[i]f the [pleadings] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, the court shall enter summary judgment forthwith." Rule 74.04(c)(6). Summary judgment is " 'an extreme, drastic remedy,' [and upon] review we examine the record in the light most favorable to the party against whom the judgment was entered." *Heitz v. Champagne*, 839 S.W.2d 700, 702 (Mo.App. 1992) (quoting *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 385–86 (Mo. banc 1991)). We further "accord to that party all reasonable inferences which may be drawn from the evidence." *Heitz*, 839 S.W.2d at 702 (citing *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987)). Notwithstanding our review of the record, we do not defer to the trial court's determination; rather, our review is *de novo*. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). The right of a party to summary judgment "must clearly appear as a matter of law," *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990), and "the burden is on the appealing party to demonstrate error." *Mobley v. Copeland*, 828 S.W.2d 717, 724 (Mo.App.1992). We must therefore decide of our own volition if Respondent "established an undisputed right to judgment as a matter of law." *Stacey v. Redford*, 226 S.W.3d 913, 914 (Mo.App.2007).

### III. Discussion

■ Appellants present only one issue for our review, arguing that the Release "did not release the claims of Appellants in that the release was not a mutual release as it did not contain reciprocal language which could be interpreted to estop appellant's third party claim for contribution." Respondent, relying exclusively upon *Spicer*, responds that Appellants are estopped from filing a claim against Respondent because they failed to explicitly reserve such a right in the Release. In its award of summary judgment, the trial court agreed with Respondent's position that "the [Release] contained no language of reservation allowing for a subsequent action by [Appellants] against [Respondent,]" and that *Spicer* and its underlying line of cases stands for the proposition that "a release has the effect of preventing the party released from bringing a later action against the releasing party unless the release includes language indicating that the release is to have a limited effect." Finding no such limiting language, the trial court found itself bound by the holding in *Spicer*.

---

**2.** All references to rules are to Missouri Court Rules (2007), unless otherwise indicated.

Release agreements, like that signed by Respondent and his wife in this case, are contracts. *Sansone v. Moseley,* 912 S.W.2d 666, 670 (Mo.App.1995). Thus, the interpretation of such agreements relies on the same basic principles applicable to contract interpretation. *Eisenberg v. Redd,* 38 S.W.3d 409, 410–11 (Mo.2001) (citing *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993)). As such:

"A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 816 (Mo.App.1992). *See also J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). If there is no ambiguity, the court need not resort to construction of the contract, but rather the intent of the parties is determined from the four corners of the contract. *J.E. Hathman, Inc.,* 491 S.W.2d at 264.

*Id.* at 411. In other words, if there is no ambiguity, any extrinsic or parol evidence as to the intent and meaning of the contract must be excluded from the court's review of the contract; the intent of the parties "depend[s] on what the parties actually said and did and not upon one party's own understanding." *Heritage Roofing, L.L.C. v. Fischer,* 164 S.W.3d 128, 134 (Mo.App.2005). "When interpreting any contract, a court must follow the terms of the contract as written if those terms are plain, unequivocal, and clear." *Muilenburg, Inc. v. Cherokee Rose Design and Build, L.L.C.,* 250 S.W.3d 848, 853–54 (Mo. App.2008) (citing *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997)).

The Release in the instant case was executed only by Respondent, his wife and their attorney. It provides, in relevant part, as follows:

WHEREAS, [Appellants] have now agreed to settle *all claims, liability, damages, causes of action and actions,* whether known or unknown, whether statutory or not, and regardless of whether the nature and extent of said injuries or damages are fully known or unknown at this time *which [Respondent and his wife], or either of them, ever had, now have, or might have hereafter, against [Appellants]* for the sum of $900,000.00, the payment of mediation fees incurred in the course of the lawsuit, and the payment of taxable court costs in the amount of $2,490.65.

NOW, THEREFORE, for and in consideration of the payment of $902,490.65 and the payment of mediation fees, ... said *[Respondent and his wife],* being of lawful age, *do hereby release, acquit and forever discharge [Appellants]* ... *of and from any and all claims which [Respondent and his wife], or either of them, ever had, now have, or might have hereafter, arising from, out of, or on account of* (a) the incident that occurred on I–44 in Webster County, Missouri on or about January 18, 2002; (b) any and all medical, hospital or other expenses of any kind or nature relating to the injuries or damages sustained by [Respondent's wife] as a result of the incident; (c) any injuries or damages, whether to person or property, sustained by [Respondent's wife] as a result of the incident, whether such injuries or damages are now known or unknown; (d) any and all claims for loss of society, consortium, companionship, love, affection and support asserted by [Respondent], arising from the incident; (e) any claim or cause of action referred to in the lawsuit; and (f) any other matter or thing whatsoever connected with or flowing from the inci-

dent, the lawsuit or damages sustained by [Respondent's wife].

This release is intended to be a full and final release of *all claims as to those specifically released herein* [.]

(Emphasis added.) This Release was Respondent's offer to enter into a unilateral contract which could be accepted by Appellants' compliance with the stated payment condition. *See Gulf Oil Corp. v. Ferguson*, 509 S.W.2d 1, 4–5 (Mo.1974).

By the explicit, clear, and unambiguous terms of the Release, the only consideration undertaken by Appellants for the release of Respondent's and his wife's claims against Appellants was the payment of the specified sum. The Release does not mention, much less require as additional consideration, any promise of release by Appellants of any claims they may have against Respondent. Thus, according to the Release's plain, unequivocal, and clear terms, the Appellants did not release any claim for contribution that they may have had against Respondent.

Nevertheless, Respondent argues that, the *Spicer* opinion and line of cases [discussed therein] stand for the principle that if a settling party wishes to preserve their right to assert a later cause of action against another party to the release, it must specifically reserve the right to do so by indicating that the release is to have limited effect.

The line of cases referred to by Respondent and relied upon in *Spicer* to support this principle is *Lugena v. Hanna*, 420 S.W.2d 335 (Mo.1967); *Farmer v. Arnold*, 371 S.W.2d 265 (Mo.1963); *Eberting v. Skinner*, 364 S.W.2d 829 (Mo.App.1963); *England v. Yellow Transit Co.*, 240 Mo. App. 968, 225 S.W.2d 366 (Mo.App.1949). *Spicer*, 19 S.W.3d at 158. Each case in this line of cases, as well as *Spicer*, arose out of an automobile accident and the alleged negligence of various drivers. *Luge-*

*na*, 420 S.W.2d at 336–337; *Farmer*, 371 S.W.2d at 266; *Eberting*, 364 S.W.2d at 830; *England*, 225 S.W.2d at 366–367; *Spicer*, 19 S.W.3d at 154. While *Spicer* appears to support the general principle espoused by Respondent, its reliance upon this line of cases was misplaced and, moreover, was not necessary to support its decision under the unique wording of the release under consideration therein. We first briefly consider *Farmer* and *Lugena* to set the context for their annunciation of this principle and then discuss how *Spicer* differs from both this line of cases and from the case at bar.

In *Farmer*, one party to an automobile accident, the releasor, executed an agreement releasing the other party, the releasee, from liability for the sum of $50, and the releasee then later filed suit against the releasor to recover damages arising out of the same accident. Our Supreme Court held that the releasee was estopped from maintaining his subsequent claim against the releasor, and pointed out "there was but one accident, each party blaming the other ... [and] 'only one side could be liable and only one side could recover.'" *Id.* at 269 (quoting *England v. Yellow Transit Co.*, 240 Mo.App. 968, 225 S.W.2d 366, 368 (1949)).

Four years later, in *Lugena v. Hanna*, 420 S.W.2d 335 (Mo.1967), the Court said:

[such cases] are based on the principle that where one of the parties to an accident is charged with liability by the other, and settles the claim or takes a release, he should not thereafter be permitted to bring or pursue his action on the theory that the other party was negligent and therefore liable, since the settlement or the taking of a release may be regarded as an expressed or implied admission of negligence on his part, and that the taking of a release without a reservation of right in the releasee to

make a claim against the releasor constitutes an accord and satisfaction of all claims of the parties to the settlement arising out of the same accident, and the releasee is estopped from so doing. Generally a party will not be permitted to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him.

*Id.* at 341.

■ At the time of *Lugena, Farmer, Eberting* and *England,* Missouri tort law was governed by the contributory negligence theory that,

where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having taken the dangerous position he is injured, he can have no recovery against another who is also negligent because such person's negligence in taking the dangerous position is one of the direct and proximate causes of the injury and contributes thereto.

*Smith v. Ozark Water Mills Co.,* 215 Mo. App. 129, 238 S.W. 573, 575–76 (1922). As a rule, "[c]ontributory negligence is a want of due care on the part of a plaintiff claiming to have been damaged by the actionable negligence of another, combining and concurring with that negligence, and contributing to the damage as a proximate cause thereof, without which such damage would not have occurred." *Rader v. David,* 207 S.W.2d 519, 523 (Mo.App.1948). Thus, a claimant's contributory negligence acted as a bar to any recovery. *See Gramex Corp. v. Green Supply, Inc.,* 89 S.W.3d 432, 439 (Mo. banc 2002).

A release agreement, when examined in the context of the contributory negligence bar to recovery, assumes two mutually exclusive conditions: (1) that the releasee was negligent and, therefore, a tortfeasor, and (2) that the releasor was *not* negligent and was *not* a tortfeasor. Any subsequent claim filed by the releasee against the releasor, however, requires that the releasee must necessarily invert both conditions because such a claim, under the contributory negligence bar to recovery view, must be premised upon the releasee's complete lack of any negligence and the releasor's negligence in causing the tort. The premise of such a claim and the position of the releasee in making such a claim, therefore, is diametrically opposed to and totally inconsistent with the premise upon which the release was obtained and given in the first instance. Thus, under the law in place during *Lugena, Farmer, Eberting* and *England,* where contributory negligence was a complete bar to recovery, a release given to a releasee premised upon the releasee's negligence and the releasor's freedom from any negligence effectively operated to estop the releasee from taking a contrary position in a subsequent claim against the releasor, and so, a releasee, as an admitted tortfeasor, could not also be a claimant.

■ Tort law changed, however, in 1983, with the adoption of the concept of comparative fault. *See Gustafson v. Benda,* 661 S.W.2d 11, 15 (Mo. banc 1983); *Gramex,* 89 S.W.3d at 439. Under the comparative fault doctrine, "[i]n an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." U.C.F.A. § 1(a) (1977). The doctrine is "directed toward the elimination of the inequities inherent in legal doctrines which irrationally impose total responsibility upon one party for the consequences of the conduct of both parties."

*Earll v. Consolidated Aluminum Corp.,* 714 S.W.2d 932, 936 (Mo.App.1986). In other words, comparative fault-unlike contributory negligence-permits a party to be both a claimant *and* a tortfeasor.

*Spicer* involved a factual scenario similar to the case at bar, but with one significant difference—the language of the release there explicitly referred to and expressed the intention of the parties to release any claims by the releasees against the releasor. After being injured in an automobile accident, Steve Gilliam and his wife filed suit against the driver of the other vehicle and his employer, Spicer. *Spicer,* 19 S.W.3d at 154. A jury returned verdicts for both Gilliam and his wife, but also found Gilliam to be 20% at fault for the accident. *Id.* Before an appeal could be perfected, the parties settled for amounts set out in separate release agreements. *Id.* at 154–55. In the wife's release, Spicer expressly reserved the right to seek contribution from Gilliam. That reservation language, however, was omitted from the release signed by Gilliam. *Id.* Shortly thereafter, Spicer filed suit against Gilliam seeking contribution for the damages paid to Gilliam's wife. *Id.* at 155.

In his motion for summary judgment, Gilliam argued that the *Lugena–Farmer* line of cases required Spicer to have expressly reserved the right to sue him for contribution; without such a reservation, he argued, the release he executed must be interpreted as "an accord and satisfaction of all claims of the parties to the settlement," and Spicer was thereby estopped from seeking contribution. *Spicer,* 19 S.W.3d at 155. The trial court agreed and sustained the defendant's motion, highlighting "an absence of words in the operative part of the release which would indicate an intention to limit or restrict the release's effect," as required by *Lugena.*

*Spicer,* 19 S.W.3d at 155; *Lugena,* 420 S.W.2d at 341.

The *Spicer* Court discussed *Lugena, Farmer, Eberting,* and *England* related to the general principle as stated in *Lugena* and now asserted here by Respondent that: "[i]n the absence of words in the operative part of a general release which indicate an intention to limit or restrict its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties to the release." *Spicer,* 19 S.W.3d at 159 (quoting *Lugena,* 420 S.W.2d at 340–341). Nevertheless, the court held that Spicer was estopped from suing Gilliam for contribution for injuries to his passenger where the release from Gilliam to Spicer provided that:

> it was a "full release, not a limited one; *it being the intent of the parties not only to set at rest forever the differences between them,* but also to release in full the claims of [releasor] against all persons, firms and corporations whomsoever." It also provided that the payments made in consideration of the release were made to *"avoid further expenses connected with additional investigation and litigation."*

*Spicer,* 19 S.W.3d at 159 (emphasis added). Obviously, the court relied in its holding upon the explicit language in the release to glean the intent of the parties to release all claims, including those of Spicer against Gilliam, and did not necessarily rely upon the general principle concerning the absence of limiting language as recited from *Lugena.* In other words, Spicer's acceptance of the release from Gilliam with the stated intent "to set at rest forever the differences between them" and "to avoid further expenses connected with additional investigation and litigation" estopped Spicer from taking a contrary position by asserting a subsequent claim against Gil-

liam for contribution arising out of the same incident. Thus, the holding in *Spicer* is limited to the explicit language of the release therein and such explicit language distinguishes it from the Release in the case at bar, which has no such language.

Even though the lack of limitation principle in the *Lugena–Farmer* line of cases was not essential to its holding, the *Spicer* court's discussion of it understandably caused the trial court confusion as to the principle's continued vitality as applied to a subsequent action by a releasee against a releasor.[3] This Court perceives the flaw in *Spicer*'s discussion of this principle to be that, although the existence of a right to contribution is acknowledged in passing, *Spicer*, 19 S.W.3d at 159, the Court failed to take into consideration the significance of relying upon a principle premised upon the notion of contributory negligence at a time when that premise was no longer operative. As discussed *supra*, contributory negligence operated as a complete bar to recovery; a party can be either a tortfeasor *or* a claimant, but not both. Under comparative fault, however, such is not the case, but rather a party can be both a tortfeasor *and* a claimant. To that end, at the time *Spicer* was decided, there was no longer a fundamental contradiction in position between a releasee being released from liability as a tortfeasor by a releasor as a claimant on the one hand and the releasee as a claimant later suing the releasor as a tortfeasor on the other. Indeed, such flexibility and freedom of contract in asserting and settling claims in arms-length negotiations is a virtual necessity given the complexity of most multiparty actions where almost every actor is both an alleged tortfeasor and an alleged claimant.

■ Because the *Lugena–Farmer* line of cases was decided under the now-vacated theory of contributory negligence, the rationale for their application of the principles of equitable estoppel and accord and satisfaction to releasees in release agreement cases involving allegations of negligence[4] is no longer appropriate or warranted. The perpetuation of the *Lugena–Farmer* lack of limitation requirement based upon these principles in cases involving comparative fault only serves to create an unnecessary judicially mandated trap for parties in their negotiation and settlement of claims. A release, just as any other contract, should be enforced according to its terms "as written if those terms are plain, unequivocal, and clear." *Muilenburg, Inc.*, 250 S.W.3d at 853–54

---

3. Obliviously, a different analysis applies to a *releasor* who, after allegedly giving a release of all claims without any limitation or reservation, seeks to assert a subsequent claim against the *releasee* arising out the same incident. Even though a recital of the general principle in *Lugena–Farmer* may accurately reflect the result reached, the underlying rationale in such a situation is the construction and interpretation of the actual contractual language in the release. *See, e.g., Anderson v. Curators of University of Missouri*, 103 S.W.3d 394, 399 (Mo.App.2003).

4. We are aware that the lack of limitation principle in the *Lugena–Farmer* line of cases has been extended to a release in a breach of contract case, *Sexton v. First Nat'l Mercantile Bank*, 713 S.W.2d 30 (Mo.App.1986), and to a release in a fraud case, *Heitz v. Champagne*, 839 S.W.2d 700 (Mo.App.1992). Even though the contributory negligence-comparative fault analysis employed to differentiate the instant case from the *Lugena–Farmer* line of cases may appear at first blush to undermine the holding of each case, the estoppel or the accord and satisfaction theory underlying each such extension may be independently supportable by the differing elements of such actions or the unique facts of each such case. Until we are presented with a case involving appropriate analogous facts to either, however, a review or reanalysis of *Sexton* or *Heitz* is best left for another day.

(citing *Malan Realty Investors, Inc.*, 953 S.W.2d at 626–27).

Finally, because the trial court in this case relied exclusively on *Spicer* and the absence of any limiting language in the Release in granting Respondent summary judgment and Respondent has not advanced any other theory upon which to support the summary judgment, we find the court's decision erroneous as a matter of law, and reverse and remand for further proceedings.

### IV.   Decision

The trial court's summary judgment against Appellants on their claim for contribution from Respondent is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

BURRELL, P.J., and PARRISH, J., concur.