**J. W. FARMER, Plaintiff (Appellant),**

v.

**Chester ARNOLD, Defendant (Respondent).**

No. 49895.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

Rehearing Denied Oct. 14, 1963.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, O. J. Taylor, Springfield, for appellant.

Stewart, Reid & Turner, Kenneth H. Reid, Springfield, for respondent.

BARRETT, Commissioner.

On December 31, 1956, the plaintiff Farmer, driving a 1957 Chevrolet automobile south on Dade County Road D, was involved in a collision with a 1941 Buick automobile driven north by the defendant Arnold. On December 20, 1959, Farmer instituted this action against Arnold to recover $15,000 for personal injuries and $1,000 property damage, alleging as grounds of recovery the humanitarian doctrine and six specifications of primary negligence. In circumstances hereinafter noted the circuit court sustained Arnold's motion for summary judgment and Farmer has appealed asserting among other reasons that there was a genuinely controverted issue of fact to be determined and that therefore the remedy of summary judgment was not appropriate.

In response to Farmer's action for damages Arnold's answer and motion for summary judgment set up the fact that on January 8, 1957, Farmer paid him the sum of $50 for which, in the language of the document presented by Farmer and signed by Arnold, he "released John William Farmer from all claims and causes of action of the undersigned arising from the above described accident." This release was sought and executed in these circumstances: Farmer had no automobile liability insurance and was therefore subject to the Motor Vehicle Safety Responsibility Law, Ch. 303, RSMo 1959, V.A.M.S. Since he had no liability insurance and the total damages exceeded $100, it was Farmer's duty to report the fact of the accident to the motor vehicle safety unit and either deposit security in a sum "determined by the director" of revenue or furnish evidence that he "has been released from liability." RSMo 1959, §§ 303.030, 303.040, 303.070. After consultation in Jefferson City with the then supervisor of the safety responsibility unit, Farmer was furnished a release form prepared by the department and it was this form that Arnold executed. In addition to the quoted provision releasing Farmer of all claims and causes of

action the document recites that it "authorizes the Safety Responsibility Unit to accept this certificate as satisfactory evidence of such release from liability as required by the Safety Responsibility Law."

In connection with the release Farmer first claims that the records of the safety responsibility unit are confidential and that therefore the release was not admissible in evidence and consequently could not support a summary judgment. In the second place, Farmer asserts that the release did not comprise the entire agreement of the parties. He says that the release was obtained by him for the sole and specific purpose of complying with the safety responsibility law so as to avoid the loss of "his driving privileges." He claims that immediately following the accident he and Arnold entered into an oral agreement "whereby each agreed to pay the other for his damages" and that this oral contract, which was not reduced to writing, was the entire agreement between the parties. And he urges that the actual terms of this agreement was a question of fact for a jury's determination, at least, he contends, it made summary judgment procedure inapplicable.

Upon the hearing of the motion for summary judgment the parties stipulated that parts of depositions could be considered and they are set forth in this transcript. The defendant used the deposition of the present supervisor of the safety responsibility unit to prove the filing of the release. In his deposition Farmer testified to the oral agreement. In part he said that he took the release from Arnold, "Yeah, a release to send to the State. I didn't want to fool with it. I didn't have any insurance and he said he'd pay or take care of my car and I had just got my car and hadn't gotten any insurance and I talked to the State about it, I went up there and they said the thing to do was just to get a release 'and then you can settle with the insurance company.' I just took a release from him." Or later, he testified, "I got my release—I didn't have any insurance and they told

me that where I didn't have any insurance, if it was his fault why he didn't have any comeback. His old car wasn't worth over $50.00 and he offered to take $50.00. Well, I couldn't afford, well, just like it is now, it is three years and the darned thing ain't settled, I couldn't afford for $50.00 when he said he'd pay my damages and my doctor bills, I took his word for it, which I thought he would." Or again, "He said he'd take care of my damage and I went to the State and I didn't have any insurance and of course under the law you've got to put up $15,000 and it wasn't but a $50.00 car, an old $50.00 car, and they said if they was me they would just pay him for it."

It is not necessary to a disposition of this cause to attempt an authoritative determination of whether Farmer's "parol evidence concerning agreements prior to or contemporaneous with the execution of (the) release must be ignored." England v. Yellow Transit Co., 240 Mo.App. 968, 975, 225 S.W.2d 366, 368. In this connection it is sufficient to note in passing that the parties have misconceived the applicable theories and have confused the rules relating to best and secondary evidence (Ch. XIX, p. 701, 32 C.J.S. Evidence) and the rules relating to parol or extrinsic evidence affecting writings. Ch. XX, p. 784, 32 C.J.S. The precise point is illustrated by some of the cases relied on, for example Hart v. Riedel (Mo.App.), 51 S.W.2d 891. There, three years after the execution of a warranty deed, the plaintiff sued on an oral contract by which he claimed the defendants had agreed to extend an electric line to the property. In holding that parol evidence was not offered for the purpose of adding to or varying the terms of the deed the court said: *"The parol contract which plaintiffs sought to establish was independent of and not inconsistent with the deed. * * * The deed made no reference to the contract upon which plaintiffs seek to recover. * * * The terms of the contract were not of a nature sufficiently related to the*

*subject-matter of the conveyance of the real estate to require their inclusion in the deed as one of the necessary elements, and the terms of the contract upon which plaintiffs seek to recover are not inherently in conflict with the terms of the deed,* and therefore admission of this evidence for the purpose of establishing and proving this contract in no way tended to vary, add to, or contradict the deed." (Emphasis supplied.) In further illustration of this distinction and principle see Scott v. Asbury (Mo.App.), 198 S.W. 1131, and Mitchell v. Philippi, 359 Mo. 754, 223 S.W.2d 441. While not a determinative factor in the decision of this case it should be noted in this connection that the oral contract is of course inconsistent with the basic theory of the release, and both the release and the contract are so related to the same general subject matter that they should have been included in one document.

■ On the other hand, the claim that the release filed with the safety responsibility unit is "confidential" and not admissible as evidence is untenable. Under one of its provisions neither the report required by § 303.040, the security filed, nor the action taken by the director "shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages." RSMo 1959, § 303.310. In so far as it might concern this case that particular provision is self-explanatory, it does not by its terms refer to any release given under the act. The director is required to keep and certify other records "of any person subject to the provisions of this chapter" (RSMo 1959, § 303.300), and certain other orders are said to be "evidence in all courts of this state in actions arising under this chapter." RSMo 1959, § 303.-315. The release may or may not be one of those public records subject to inspection and use (Annotation 84 A.L.R.2d 1261), but here it is sufficient to say that the release is not inadmissible in evidence for the reasons now advanced.

Assuming for the purposes of this opinion that the oral agreement was relevant and admissible, the crux of this controversy and of this appeal is whether nevertheless, in all the circumstances of this record, it was appropriate under summary judgment procedure (Sup.Ct.Rule 74.04, V. A.M.R. Swink v. Swink (Mo.) 367 S.W.2d 575) for the court to declare as a matter of law that the plaintiff Farmer was estopped from maintaining this action. And in its essentials, including many of the circumstances, the recent case of Eberting v. Skinner (Mo.App.), 364 S.W.2d 829, is the key to this cause and in its essence governs its determination. There the automobile driven by the plaintiff was a state-owned vehicle and there were two releases, a safety responsibility release and another by the plaintiff as the Director of Grain and Warehouse Division of the Department of Agriculture for $533.40, $483 of which was paid directly to the garage that repaired the state-owned automobile and $50 of which was recited to be "for the use of my personal car while the car was being repaired." The appellant attempts to distinguish that case, and in some respects it is distinguishable, and urges that the court "did not directly pass on the question of whether or not the document in question was a release." Also by way of distinction it is said that "there was no contention there that appellant has reserved the right to make a claim against respondent for his own damages" as Farmer claims in effect by his oral agreement here. But, of course, the fact that Eberting instituted the suit for damages for personal injuries was a claim that the property damage releases did not include his personal injuries, that much was certainly implied in his claim that the safety responsibility form was not a release "but a mere statement of the defendant exonerating the plaintiff from all responsibility for the collision." But directly pertinent to this case the court said:

"As to whether the two papers filed with the Safety Responsibility Unit were releases, the plaintiff himself so

considered them and in his testimony frequently referred to them as such. They contain the statement that the defendant *has* released him from all liability in respect to the collision. If a release actually had not been effected, then he was engaged in practicing a fraud upon the state. And can there be doubt that, had Mrs. Skinner chose to bring action against him for damages, he would have pleaded such instruments as a defense? *For all practical purposes they were releases.*"

And then, considering the transaction as a whole and the surrounding circumstances, the court found that there was an accord and satisfaction.

In arriving at its decision the court in the Eberting case employed and quoted from the relevant cases and authorities, Annotation 32 A.L.R.2d 937; England v. Yellow Transit Co., 240 Mo.App. 968, 225 S.W.2d 366, and Faught v. Washam (Mo.), 329 S.W.2d 588, 594, and but little could be added to the direct and inferential force of the decision. This is not to say that the immediate parties to a motor vehicular collision may or may not in some circumstances contract and validly agree to pay one another's damages and losses. Annotation 62 A.L.R.2d 977. But this is not a suit on the contract, and, as the court pointed out in the England case, there was but one accident, each party blaming the other, and, as in the state of the record here, "only one side could be liable and only one side could recover." In these circumstances the court observed that it would be "unusual" or "extraordinary" for one of the parties to settle her claim for $500 and knowingly leave pending against her a claim for $6,500 or for the other party to pay out $500 when it was in good faith claiming freedom from responsibility and seeking to recover $6,500.

■■ To the reasoning in the Eberting and England cases these further supporting factors might be added. Ultimately, of course, the intention of the parties is the test of their contractual rights and liabilities, nevertheless, a compromise and settlement "operates as a merger of, and bars all right to recover on, the claim or right of action included therein." 11 Am. Jur. (Compromise and Settlement) §§ 23–24, p. 271. A compromise fairly made "is a final and conclusive adjustment of their controversy * * *. It operates as a merger of, and bars all right of recovery on, the claim or right of action included therein and the defenses thereto." 11 Am.Jur. § 25, p. 272; 15 C.J.S. Compromise and Settlement §§ 25–26, pp. 743–744. In Bacon v. United States, D.C., 209 F.Supp. 811, it was held that a covenant not to sue, for a consideration of $2,287.80, was nevertheless a release and "did not retain an automobile damage claim" even though $50 of the recited sum was the deductible amount of their collision coverage, and even though "[they] specifically retain their claim for the balance of the damage done to their 1953 Lincoln automobile * * *." The England decision was put on the ground that a party to a compromise is estopped from afterward urging any matter constituting a setoff or counterclaim in existence at the time of making the compromise. See also 15 C.J.S. Compromise and Settlement § 25, p. 744.

■ In summary in this case, whatever the parties may have thought or intended when the plaintiff Farmer paid Arnold $50 for a release, and regardless of whether the release constituted the entire contract, the release was executed at the instigation of Farmer for his own immediate needs and benefit and he is now estopped after rendering Arnold all but defenseless from prosecuting one side of a tort action arising out of a single transaction. This principle of estoppel applies even though the release does not comprise the entire contract, it is a vital part of the oral contract asserted by the plaintiff. In addition to the Eberting and England cases, the basic principle involved in Max v. Spaeth (Mo.), 349 S.W.2d 1, is applicable here. In connection with releases and neg-

ligence actions the fact that estoppel and accord and satisfaction are defensive matters (Sup.Ct. Rule 55.10) does not prevent adjudication on summary judgment where as here the essential facts are made clear of record. Swink v. Swink, supra; Colonial Airlines v. Janas, 2 Cir., 202 F.2d 914, 918; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 185 F.2d 196; Solar Electric Corp. v. General Electric Co., D.C., 156 F.Supp. 51. And, accordingly, for the indicated reasons the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.