**John HEITZ, Plaintiff–Appellant,**

v.

**Reid CHAMPAGNE and Denise Champagne, Defendants–Respondents.**

**No. 17951.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 30, 1992.

Motion for Rehearing or Transfer
Denied Oct. 14, 1992.

Application to Transfer Denied
Nov. 24, 1992.

Craig F. Lowther, Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, Springfield, for plaintiff-appellant.

Jerry A. Harmison, Jr., Miller & Sanford, Springfield, for defendants-respondent.

SHRUM, Judge.

John Heitz, a real estate broker, appeals from a summary judgment denying his claims for damages in the aftermath of the purchase of real estate by the defendants, Reid and Denise Champagne. Heitz was the listing broker for the real estate purchased by the Champagnes.

Heitz based Count I of his petition on allegations of malicious prosecution by the Champagnes of a lawsuit they previously had brought against him and other defendants. That prior lawsuit (Case No. 1), which arose out of the real estate transaction, was settled. Heitz based Count II of his petition on allegations of breach of contract.

The question presented on appeal is whether, as a result of the circumstances surrounding the settlement of Case No. 1, Heitz is estopped from bringing this action against the Champagnes. We hold that Heitz is estopped, and we affirm the judgment.

### FACTS

On April 18, 1990, the Champagnes, by written contract, agreed to buy certain residential property in Springfield for which Heitz was the listing broker. At the June 4, 1990, closing, the Champagnes signed a document entitled "Property Inspection Acceptance" that recited:

I/we have completed all required inspections per the proposal to purchase and find the property in an acceptable condition.

The Champagnes also signed a "Property Inspection Waiver" that stated:

I/we have *not* completed all requested inspections per the proposal to purchase[;] however, I/we waive those rights and agree to close without recourse to Realtor or seller. (Emphasis in original.)

Subsequently the Champagnes filed Case No. 1 in which they alleged they had been defrauded because they were not told before closing that a hail storm on May 20, 1990, had damaged the roof of the house.

The Champagnes named as defendants several persons and firms involved in the real estate sale.[1]

From documents in the legal file of this case, we have reconstructed circumstances surrounding the settlement of Case No. 1. A recapitulation of relevant documents follows.

First, the affidavit of Heitz's prior attorney in which the attorney states he represented Heitz in Case No. 1; that when he (the attorney) appeared for depositions in Case No. 1, he was informed "the matter had been settled"; that Heitz paid no money to have Case No. 1 settled; and that neither he nor Heitz induced the Champagnes to sign a release.

Second, a letter dated July 2, 1991, from Heitz's prior attorney to the Champagnes' lawyer and two other lawyers and bearing the salutation "Dear Fellow Counsel," that states:

I understand that this case has been settled for the sum of $3800.00 to be paid to [the Champagnes] with all defendants to be released and the suit dismissed with prejudice. I also understand that [the Champagnes' lawyer] has approved the Release and Settlement Agreement *attached hereto* and has forwarded it to his clients for signature. (Our italics.)

Third, the "Release and Settlement Agreement" referred to in Heitz's attorney's affidavit and letter and in footnote 1. The document, signed by the Champagnes on July 9, 1991, recites the Champagnes' agreement to dismiss Case No. 1 with prejudice in exchange for the $3,800 payment to them. Hereafter, we refer to the "Release and Settlement Agreement" simply as "the release." Relevant portions of the release are set out marginally.[2]

---

**1.** By a document entitled "Release and Settlement Agreement," in which the Champagnes agreed to dismiss Case No. 1, the following persons and firms were designated as "releasees": Merrill Lynch Realty Operating Partnership, L.P., d/b/a Prudential Relocation Management; John Heitz, House of Brokers, Inc.; Patti Langston; and Carol Jones Company. We assume the "releasees" were the defendants in Case No. 1. The Champagnes' petition in Case No. 1 is not included in the legal file of this case.

**2.** The release states in part:

[I]n consideration of the sum of $3800, [the Champagnes] hereby release ... Heitz ... [his] agents, servants, employees, heirs, insurors, executors, administrators, successors and assigns, and all other persons, firms and corporations, of and from any and all liability, claims, demands, causes of action and actions, whether known or unknown, accrued or accruing, which any one or more of the aforesaid releasors ever had or now has:

Fourth, an undated document styled "Stipulation for Dismissal with Prejudice" that is stamped with a circuit court filing date of July 29, 1991. The stipulation states that the Champagnes "and their attorney, and defendants, by and through their attorneys ... agree that the cause of [the Champagnes], as set forth in [the Champagnes'] petition, be dismissed with prejudice to the refiling thereof." Signatures on the stipulation include those of Reid and Denise Champagne, the attorney for the Champagnes, and the attorney for John Heitz and House of Brokers.

Fifth, a circuit court order entered July 31, 1991, which dismisses Case No. 1 with prejudice. The order contains the statement, "No costs are awarded, and each party is responsible for its own attorney's fees incurred herein."

After Case No. 1 was dismissed, Heitz, on September 30, 1991, filed his petition in which he alleged, in Count I, that the Champagnes engaged in malicious prosecution in bringing their suit against him and, in Count II, that they had breached their agreement in the "Property Inspection Waiver" to "close without recourse to Realtor."

The Champagnes filed a motion in which they sought dismissal of Heitz's petition or summary judgment. The Champagnes asserted in their motion that the "exhibits clearly reveal" that

> Heitz participated in the settlement of [Case No. 1] and agreed with Reid and Denise Champagne that settlement of [Case No. 1] resolved all issues between these parties on account of the listing,

(a) On account of the listing, contracting to sell, and subsequent sale of [the] residence ...;

(b) On account of all damages resulting to the said dwelling house ... as a result of a hail storm which occurred on or about May 20, 1990; and

(c) On account of any and all roofing repairs made to the said dwelling house subsequent to the events of May 20, 1990.

For the consideration aforesaid and in order to induce settlement, releasors hereby covenant, contract and agree:

(a) That they will dismiss with prejudice Case Number 190CC2146 [Case No. 1], now pending ...;

> contracting to sell, and subsequent sale of the residence [and] on account of all damages resulting from the hailstorm.

On December 5, 1991, the trial court granted summary judgment for the Champagnes. In a memorandum, the court stated that Heitz "is estopped from maintaining this suit" and recited several reasons for that conclusion. From that judgment Heitz appeals.

## STANDARD OF REVIEW

Summary judgment is governed by Supreme Court Rule 74.04, which provides in pertinent part:

> (c) ... [Summary judgment] shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Because summary judgment is "an extreme, drastic remedy," on review we examine the record in the light most favorable to the party against whom the judgment was entered, *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 385–86 (Mo.banc 1991), and we accord to that party all reasonable inferences which may be drawn from the evidence. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo.banc 1987). The right to summary judgment "must clearly appear as a matter of law." *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990). "Nevertheless, an order granting summary judgment is not pre-

(b) That they will indemnify and hold harmless ... Heitz ... from any legal liability for any damages allegedly sustained by releasors, including litigation expenses and attorney's fees in the event any other party or subrogated insurance company makes a claim for the damages referred to herein; and

(c) *That releasees, and each of them, will not institute, nor suffer to be instituted, any action against the aforesaid releasors, or any other person, firm or corporation, for the recovery of damages on account of any of the matters referred to herein.* (Our italics.)

sumptively erroneous; thus, as a matter of general law, the burden is on the appealing party to demonstrate error." *Mobley v. Copeland,* 828 S.W.2d 717, 724 (Mo.App. 1992).

## DISCUSSION AND DECISION

On appeal, Heitz presents five points relied on, all directed at the trial court's various reasons for ordering summary judgment. As with any court-tried case, we must sustain a summary judgment if we can do so under any theory. *Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 915[1] (Mo.App.1991). If the trial court stated incorrect reasons for a correct result, we must affirm. *Id.* Thus we focus our attention on Heitz's Point II in which he contends that he was not equitably estopped to maintain his action against the Champagnes.

In *Miskimen v. Kansas City Star Co.,* 684 S.W.2d 394 (Mo.App.1984), the court made a lengthy review of various judicial pronouncements concerning equitable estoppel, including a statement of "the three things [that] must occur" for equitable estoppel (or estoppel in pais) to arise:

> first, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

684 S.W.2d at 400[7] (quoting *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 665–66[15] (Mo.1970)). The court then cautioned:

> No definition of estoppel, however, can be completely satisfactory. An equitable estoppel rests largely on the facts and circumstances of the particular case[;] thus any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances.

*Miskimen,* 684 S.W.2d at 400[7].

The Missouri Supreme Court and this district of the court of appeals, in several cases involving motor vehicle collisions, have considered the applicability of the doctrine of equitable estoppel to a personal injury or property damage claim, where the claimant earlier received a release from the other party. *See Lugena v. Hanna,* 420 S.W.2d 335 (Mo.1967); *Farmer v. Arnold,* 371 S.W.2d 265 (Mo.1963); *Max v. Spaeth,* 349 S.W.2d 1 (Mo.1961); *Eberting v. Skinner,* 364 S.W.2d 829 (Mo.App.1963); and *England v. Yellow Transit Co.,* 240 Mo. App. 968, 225 S.W.2d 366 (1949). The holdings of the court in *England* and *Eberting* may be distilled thus: "[A]bsent an express reservation, if a party has been released from all claims arising from the collision, that party is estopped from suing the party who gave the release for damages arising out of the collision." *Sexton v. First Nat'l. Mercantile Bank,* 713 S.W.2d 30, 31[1] (Mo.App.1986) (citing *England,* 225 S.W.2d at 369, and *Eberting,* 364 S.W.2d at 834–35). The *Sexton* opinion continues:

> In the absence of words in the operative part of a general release which indicate an intention to limit or restrict its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties to the release.

713 S.W.2d at 31 (quoting *Lugena,* 420 S.W.2d at 341[9]).

*Sexton* involved a settlement agreement entered into by a bank, an automobile dealership, the dealership's principal shareholder and his wife, and Chrysler Credit Corporation. Under the terms of the settlement, the plaintiff-appellant shareholder received a release from certain "claims and liabilities owed" to the bank. This court, while noting the various cases cited above involved automobile collisions, stated that "no reason is advanced or known to us why this principle should not be applicable to a document settling debts, security interests, and other financial matters." 713 S.W.2d at 31. We believe the principle extracted from earlier cases and restated in *Sexton* also is applicable to cases involving a release from a fraud claim arising out of a real estate transaction.

Heitz points to no language in the release that prevents its application to the claims he now brings. Nor do we find any language of limitation. However, in his Point II, Heitz offers the following arguments in support of his claim that the doctrine of equitable estoppel does not apply: he made no "admission or other act inconsistent with his later claim for malicious prosecution and breach of contract," he did not induce the Champagnes to enter into the settlement agreement, and the Champagnes did not change their position to their detriment.

■ The first prong of Heitz's argument, that there is an absence of an admission or other act on his part inconsistent with his later claim, derives its support from Heitz's Point I in which he argues summary judgment was inappropriate because there exists a genuine issue of material fact about whether he "participated" in the settlement of Case No. 1.[3]

Heitz points to the following as evidence of his lack of participation: his prior lawyer's first knowledge of the settlement of Case No. 1 came after the lawyer appeared for depositions in that case and was told "the matter had been settled"; neither Heitz nor his lawyer drafted or signed the release; Heitz contributed no money to the settlement of Case No. 1; and neither Heitz nor his lawyer induced the Champagnes to sign the release.

Although Heitz's prior lawyer did not participate in the settlement negotiations in Case No. 1, he learned that such negotiations had occurred when he appeared for the canceled depositions. Attached to Heitz's prior attorney's July 2, 1991, letter was a copy of the release that not only names Heitz as a releasee but also contains no reservation of his subsequent claims

against the Champagnes for malicious prosecution and for breach of contract. With knowledge of the settlement terms, the lawyer, on behalf of Heitz, signed the "Stipulation for Dismissal with Prejudice" that was filed July 29, 1991. This is not a case in which Heitz was a gratuitous releasee, named in the release without his assent or his knowledge of the document's terms. Heitz "signed on" to the settlement of Case No. 1, a settlement that included the Champagnes' execution of the release, the terms of which Heitz had knowledge and to which he voiced no objection. The fact that neither Heitz nor his lawyer participated in the negotiations that led to the settlement or in the drafting of the release is immaterial.

The fact that neither Heitz nor his lawyer signed the release does not negate the estoppel effect. In *Lugena* and *Farmer*, the parties estopped to bring their actions had not signed the releases. 420 S.W.2d at 37; 371 S.W.2d at 266.

■ On these facts, we likewise view as immaterial the fact that Heitz did not contribute to the $3,800 paid the Champagnes and the fact that there was no other inducement by Heitz in the form of a direct solicitation of the Champagnes to sign the release. Nor does the absence of any "direct inducement" negate the presence of the second requirement for equitable estoppel to arise, namely, whether the Champagnes acted on the faith of "such admission, statement or act" by Heitz. *See Miskimen*, 684 S.W.2d at 400[7]. Heitz argues this requirement for equitable estoppel is absent; for the reasons that follow, we hold the requirement is satisfied.

Heitz was fully aware of the contents of the release prior to his joining in the "Stipulation for Dismissal with Prejudice." In

---

3. In his reply brief, Heitz states that the issue of his participation in the settlement of Case No. 1 is relevant to one of the elements of a malicious prosecution action, namely, whether Case No. 1 terminated in his favor. (To support a claim for malicious prosecution, a plaintiff must show that the defendant instituted a judicial proceeding without probable cause and with malice; that the proceeding terminated in the plaintiff's favor; and that the plaintiff was damaged. *Tur-*

*man v. Schneider Bailey, Inc.,* 768 S.W.2d 108, 112[2] (Mo.App.1988).)

Although we need not decide whether Heitz received a favorable termination in Case No. 1, we believe his participation, or lack thereof, in the settlement of Case No. 1 is relevant to a determination of whether there was "an admission, statement or act inconsistent with a claim afterwards asserted and sued upon...." *Miskimen*, 684 S.W.2d at 400.

the release, the Champagnes gave up all claims they had against Heitz on account of "the listing, contracting to sell, and subsequent sale of [the] residence" and all damages resulting from the hail storm including repairs to the roof of the house. Although Heitz did not sign the release, for purposes of the doctrine of equitable estoppel, we consider significant the provision set out in italics, *supra* note 2, that the "releasees ... will not institute, nor suffer to be instituted, any action against the aforesaid releasors ... for the recovery of damages on account of any of the matters referred to herein." The quoted provision reflects an understanding on the part of the Champagnes. Apropos is *England* in which the court concluded that the circumstances surrounding the execution of the release "were all calculated to and did lead the [releasor] to believe that the entire controversy was being settled." 225 S.W.2d at 369. *See also Stenger v. Great Southern Sav. & Loan Ass'n,* 677 S.W.2d 376 (Mo.App.1984), where this court stated that "estoppel arises from the unfairness of permitting a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions." *Id.* at 383[14].

 Heitz also contends there can be no estoppel because the Champagnes did not change their position to their detriment. He argues that the Champagnes gave up nothing of value because they had no right to bring Case No. 1. We need not exhume the remains of Case No. 1 to recall the general principle of law that allegations of fraud in a real estate transaction can survive an asserted defense based on a waiver. *See, e.g., Peck v. Jadwin,* 704 S.W.2d 708 (Mo.App.1986), where we noted that a party fraudulently induced to enter a contract is deemed to have waived the fraud by entering into a second agreement only where, at the time of making the second agreement, the party has knowledge of the fraud. *Id.* at 711–12[2].

Had Heitz considered the Champagnes' claim to be without probable cause or a breach of their agreement "to close without recourse to Realtor," he could have refused to be a party to the "Stipulation for Dismissal with Prejudice," he could have insisted on reserving his rights to proceed against the Champagnes, and he could have voiced objection to the portion of the dismissal order that required him to pay his attorney fees. Under the facts and circumstances as shown in the record, Heitz is estopped from maintaining his action against the Champagnes. The trial court correctly entered summary judgment.

The judgment is affirmed.

PARRISH, C.J., and CROW, P.J., concur.