Jo Ann **BOSHERS, Personal Representative of the Estate of Velma May Boshers, Deceased, Plaintiff–Appellant,**

v.

**The HUMANE SOCIETY OF MISSOURI, INC., and Frank David Garcia, Defendants–Respondents.**

No. 20422.

Missouri Court of Appeals, Southern District, Division One.

July 10, 1996.

Motion for Rehearing Denied Aug. 14, 1996.

Richard L. Anderson, Kimberling City, for plaintiff-appellant.

Virginia L. Fry, Eric G. Jensen, Price, Fry & Robb, P.C., Springfield, for defendants-respondents.

GARRISON, Judge.

This is an appeal from a summary judgment entered in favor of Respondents (Defendants), the Humane Society of Missouri, Inc. (Humane Society) and Frank David Garcia (Garcia).[1] We affirm.

This suit had its genesis in a search of Velma Boshers' property on October 4, 1989 which resulted in the seizure of a number of animals (38 dogs, 23 horses, 33 chickens, 3 calves, 3 ducks, 3 geese, 1 cat and 1 goat) which were allegedly neglected or abused.[2] In Count I of Plaintiff's Second Amended Petition (titled "Prima Facie Tort"), she[3] alleged that the search, although conducted pursuant to the "purported" authority of a search warrant, was caused or brought about by Garcia, as an employee of the Humane Society, not for the purpose of protecting neglected and abused animals, but rather to punish "plaintiff and her daughters for having previously refused to sell [Garcia] a registered quarter horse foal." She also alleged that Garcia urged, instigated and insisted that the search be conducted; that he acted without justification, with the deliberate and willful intent to cause injury and damage to her; and that she was arrested and suffered physical and mental injury as a result. Plaintiff sought both actual and punitive damages.

In Count II, Plaintiff alleged that Defendants converted her animals to their own use without her consent, justification or excuse and that, despite her demands, the animals had not been returned to her. Consequently, she sought actual and punitive damages for conversion.

In support of their motion for summary judgment, Defendants attached a copy of the search warrant, the application, and an affidavit by the sheriff which recited that a search warrant had been executed on the same premises nine months earlier, at which time "numerous horses and dogs displaying abuse, neglect, undernourishment and disease" were observed. It also recited that complaints had been received since then from a number of people (identified in the affidavit) about dogs from the Boshers property attacking other animals and threatening children, and that animals on the property "appear[ed] to be starved, mistreated, dying and otherwise abused and/or neglected."

Plaintiff responded to the motion for summary judgment by filing the affidavits of Velma Boshers' daughters, Jo Ann Boshers and Donna Boshers. The affidavits included statements that in 1985 Garcia threatened to take revenge against them through his employment with the Humane Society when Velma refused to sell him a colt; that Garcia made similar threats in the following months; that in August, 1989 Garcia encouraged neighbors to file complaints against Velma by way of a newspaper article;[4] that Garcia caused a message to be broadcast on the

---

1. In some instances in this opinion we refer to persons by their given or surnames for the sake of clarity. No disrespect is intended.

2. Other suits were filed against the Sheriff of Laclede County seeking damages arising from the search which resulted in summary judgments in favor of the sheriff and which were affirmed by this court. *See State ex rel. Donna Faye Boshers v. Dotson,* 879 S.W.2d 730 (Mo.App.S.D. 1994); *State ex rel. Jo Ann Boshers v. Dotson,* 879 S.W.2d 734 (Mo.App.S.D.1994); and *State ex rel. Velma Boshers v. Dotson,* 879 S.W.2d 734 (Mo. App.S.D.1994).

3. The original suit was filed by Velma Boshers. The present plaintiff was substituted after Velma's death.

4. As evidence of this, the affidavits attached a copy of a newspaper article reporting that residents living "off Highway 64, about 5 miles west [sic] Lebanon" were concerned about dogs belonging to "a neighbor" which were running in a pack, creating a threat to children, pets and livestock. The article quoted the sheriff and Garcia, as investigator for the Humane Society, as saying that they could do nothing about the concerns unless someone filed a complaint. Garcia was also quoted as saying he could not prove that the dogs belonged to the property owner in question. The newspaper article did not name or identify Velma or any of her daughters.

local radio station asking people to file animal neglect, abuse or other complaints against Velma or her two daughters; that although numerous animals were seized, there had neither been a hearing about the propriety of the seizure nor a return of the animals; and that Velma had made a claim against the Humane Society for return of her animals, which was ignored.

In its order granting the motion for summary judgment, the trial court noted that the search warrant had been found to be valid in the three earlier cases filed against the sheriff as a result of the search, and that the affidavit attached to the application for the search warrant identified nine individuals besides Garcia who had complained to the sheriff and supplied information to him. It found that Defendants were assisting the sheriff in executing a warrant which the court had found was valid and which Plaintiff was collaterally estopped from attacking.

As to Count II (the count for conversion), the court found that after the animals were seized, the sheriff arranged to have them stored by Defendants until further order from the sheriff or the court. Because the animals had never been released by the sheriff or the court, the court found that the Humane Society and Garcia were entitled, as a matter of law, to a judgment on Count II. It also sustained the motion for summary judgment as to Counts III and IV (the counts for punitive damages based on Counts I and II).

Plaintiff raises three points on this appeal relating to the alleged trial court error in sustaining the motion for summary judgment: (1) the trial court misinterpreted the law by concluding that if the search warrant was valid no action would lie for abuse of process; (2) there was a genuine issue of fact as to the count for conversion because of Defendants' taking of the animals and holding them; and (3) the summary judgments as to the punitive damage claims were erroneous because they were based on the incorrect conclusion that summary judgment was proper as to the primary claims upon which they were based. We note that the issues for decision on appeal are those stated in the points relied on. *Matter of Trust of Mc-*

*Donald,* 858 S.W.2d 271, 280 (Mo.App.S.D. 1993).

The purpose of a summary judgment is to permit the trial court to enter judgment where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). A defending party need not controvert each element of the non-movant's claim; rather, it may be entitled to a judgment by showing facts that negate *any one* of claimant's elements facts. *Id.* at 381. When the movant makes a prima facie showing of the lack of a genuine issue of material fact, and thereby an entitlement to a judgment as a matter of law, the non-movant's only recourse is to show that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.*

A summary judgment is reviewed in the same manner as a court-tried or equity case and must be affirmed if, as a matter of law, the judgment is sustainable on any theory. *State ex rel. Boshers v. Dotson,* 879 S.W.2d at 731. We review the record in the light most favorable to the party against whom the judgment was entered and accord that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d at 376. In making our review, which is essentially *de novo,* we employ the same criteria in testing the summary judgment as those which the trial court is to employ. *Id.* The question of whether a summary judgment is proper is purely an issue of law founded on the record submitted. *Id.*

Plaintiff contends in her first point that the trial court erroneously concluded that there could be no abuse of process if the search warrant was valid. She argues that the theory of Count I was "abuse of process," which does not depend on the validity of the warrant, but rather is committed when the actor employs a wrongful and malicious purpose to attain an unjustifiable end or an object which

was not the purpose of the particular process employed.

▮ Count I of Plaintiff's Second Amended Petition stated that it was for "prima facie tort," as did Plaintiff's description of that count in her suggestions in opposition to the motion for summary judgment. We recognize that it is the substance of a pleading and not the title that is controlling concerning the cause of action stated. *Corley v. Jacobs*, 820 S.W.2d 668, 672 (Mo.App.E.D. 1991). There is nothing before us, however, to indicate that Plaintiff raised the issue of abuse of process in the trial court when the motion for summary judgment was being considered. Under those circumstances, she is not entitled to raise it for the first time on appeal. *Whitaker v. City of Springfield*, 889 S.W.2d 869, 874 (Mo.App.S.D.1994). On appeal, a party is bound by the position taken in the trial court, and an appellate court will not convict the trial court of error on an issue which was not put before it. *Scott v. Edwards Transp. Co.*, 889 S.W.2d 144, 147 (Mo. App.S.D.1994).

▮ Notwithstanding the failure to demonstrate that the trial court was apprised of Plaintiff's alleged reliance on an abuse of process theory, we note that the elements of that cause of action are: (1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted. *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo.banc 1990). In the instant case, the motion for summary judgment demonstrated, without contradiction, that the search warrant about which Plaintiff complains was obtained by the sheriff after complaints from several other people in addition to Garcia. It was neither obtained by Garcia nor was there a showing that he was responsible for its issuance. Plaintiff could not, in response to the motion for summary judgment, rely on her pleaded allegation that the search occurred at the insistence, urging, or instigation of Defendants in order to demonstrate the existence of a genuine issue of fact. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d at 381.

Additionally, the affidavits which Plaintiff produced in response to the motion essentially alleged only that Garcia had earlier threatened revenge for Velma's refusal to sell him a colt. They did not include any proof that Garcia used the warrant to accomplish an unlawful end or to compel Plaintiff to do anything, even if he had caused it to be issued. In *Pipefitters Health & Welfare Trust v. Waldo R., Inc.*, 760 S.W.2d 196, 198–99 (Mo.App.E.D.1988), the court said:

> It must be shown that process has been used to accomplish an unlawful end or to compel the defendant to do something which he could not be compelled to do legally. No liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time.

*See also Community Title Co. of St. Louis v. Lieberman Management Co.*, 817 S.W.2d 255, 258 (Mo.App.E.D.1991). In *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 599 (Mo.1955), the court said that "[t]he ulterior motive may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive."

Even if abuse of process had been presented to the trial court as the basis of the claim, we would be unable to conclude that, under these circumstances and on this record, the summary judgment was error. Point I is denied.

▮ In her second point, Plaintiff contends that the summary judgment was also error as to Count II, the claim for conversion. Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. banc 1988). It may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand. *Kennedy v. Fournie*, 898 S.W.2d 672, 678 (Mo.App.E.D.1995). In any event, one making a claim for conversion

must show that he "had title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion." *Id.* (emphasis omitted)

In her point relied on, Plaintiff focuses on Defendants' conduct after the seizure of the animals by the sheriff, such as taking them to St. Louis and continuing to hold them over five years, despite what she refers to as repeated demands for their return. She also alleges that there was no court order authorizing Defendants to keep the animals or take them from Laclede County.

■ In Count II of the Second Amended Petition, Plaintiff alleged that on October 4, 1989 (the date the search warrant was executed), Defendants "unlawfully took, appropriated and converted" the animals without her consent, and that she had "repeatedly" demanded their return without success. This was the claim for conversion upon which Defendants moved for a summary judgment, and was apparently based on the theories of a tortious taking of possession of the animals when they were seized, as well as a refusal to give up possession on demand.

The version of § 578.018 RSMo in effect at the time of this search, as well as the current version of that statute, authorized law enforcement officials to seek warrants to enter private property for the purpose of inspecting, caring for, or impounding neglected or abused animals. § 578.018.1.[5] In the instant case, a search warrant for that purpose was issued and resulted in the seizure of the animals in question. Plaintiff raises no issue on this appeal concerning the validity of that warrant.

Likewise, § 578.018.1(1) required that animals impounded pursuant to such a warrant "shall" be "[p]laced in the care or custody of ... an animal shelter," which, pursuant to § 578.005(4), includes the Humane Society. The parties seem to agree that the Humane Society took possession of the animals at the request of the sheriff. Under these facts,

Plaintiff did not demonstrate the existence of a genuine issue of fact concerning her right to immediate possession of the animals when they were seized.

Plaintiff also alleged that the Humane Society had not honored her request that the animals be returned. In response to the motion for summary judgment, Plaintiff attached an affidavit indicating that a request for their return was made on October 5, 1989, the day after their seizure. This is the only specific date of such a request contained in the record before us. As of that time, a criminal prosecution, and the resulting use of the animals as evidence, was still possible.[6]

■ "The officer seizing and holding property under a warrant does so on behalf of the court, and possession by the officer is, in contemplation of law, possession by the court." 79 C.J.S. *Searches and Seizures* § 217 (1995). Therefore, a court has the authority to control the disposition of property seized pursuant to its warrant, and an officer holding property must respond to the orders of the court for which he acted, and holds property subject to the court's direction and disposition. 79 C.J.S. *Searches and Seizures* § 222 (1995). It follows that delivery to a third party of items seized pursuant to § 578.018 does not bestow upon that party an independent right to control or determine the right to possession of those items.

Plaintiff cites no authority for the proposition that the Humane Society had the right or power to determine whether the animals should be returned to her upon demand. There is no indication in the record that she made demand for a return of the animals upon the sheriff, at whose instance the Humane Society took possession of them, or filed any proceeding for their return in the court issuing the warrant. Under such circumstances, we are unable to conclude that the trial court erred in entering a summary judgment on this portion of Plaintiff's claim for conversion.

---

5. At the time of the search, § 578.018, RSMo 1986, was controlling. The current version is § 578.018, RSMo 1994.

6. Plaintiff alleges in her brief that no criminal charges are pending and none can be brought due to the statute of limitations. There is no citation to the record on appeal in support of that statement.

Point II is denied.

■ In her third point on this appeal, Plaintiff alleges that the trial court erred in entering summary judgment against her on her claims for punitive damages. In order to obtain punitive damages there must first be a finding of actual damages. *Thornbrugh v. Poulin,* 679 S.W.2d 416, 419 (Mo.App.S.D. 1984). Since we have affirmed the entry of the summary judgment as to the claims for actual damages in this suit, there is no basis for punitive damages. *See State ex rel. Boshers v. Dotson,* 879 S.W.2d at 734.

Point III is denied. ·

The judgment of the trial court is affirmed. Because of the result reached in this opinion, Defendants' motion to dismiss the appeal for violations of Rule 84.04 is denied.

MONTGOMERY, P.J., and BARNEY, J., concur.