**STEVE SPICER MOTORS, INC., and the Department of Insurance of the Office of the Treasurer of the State of Florida as Receiver for and Representative of First Southern Insurance Company, Plaintiffs–Appellants,**

v.

**Steven M. GILLIAM, Defendant–Respondent.**

No. 22901.

Missouri Court of Appeals,
Southern District,
Division Two.

May 23, 2000.

Ron Mitchell, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for Appellant.

Richard E. Dorr, Kevin L. Austin and Richard E. Davis, Springfield, for Respondents.

PHILLIP R. GARRISON, Chief Judge.

A summary judgment was entered in favor of Steven M. Gilliam ("Steve") in a suit filed by Steve Spicer Motors, Inc. ("Spicer Motors") and the Department of Insurance of the State of Florida as Receiver for and Representative of First Southern Insurance Company ("First Southern").[1] The issue is whether after accepting a release from Steve, Spicer Motors was precluded from filing suit against him on a claim for contribution.

In August 1989, Steve and his wife Teresa Gilliam ("Teresa") were injured in an automobile accident when their vehicle struck a car which turned in front of them. The other car was driven by Benjamin Bailey ("Bailey") while acting in the course and scope of his employment with Spicer Motors. In a suit filed by Steve and Teresa against Bailey and Spicer Motors, a jury returned verdicts as follows: $600,000 for Teresa for her injuries; $18,000 for Steve for his injuries; and $5,000 for Steve's loss of consortium claim. The jury apportioned 80% of the fault to Bailey, 20% to Steve, and found Spicer Motors responsible for the percentage of fault assessed against Bailey. A judgment was entered in favor of Teresa in the amount of $600,000 plus costs; in favor of Steve in the amount of $14,400 for his personal injury claim; and in favor of Steve in the amount of $4,000 for his loss of consortium claim.

Bailey and Spicer Motors filed appeals from the judgment, but no appeal bond was filed. The case was settled on the same day that Steve and Teresa levied execution on vehicles owned by Spicer Motors. Teresa settled her claims for the payment of $566,400, and Steve settled his for a total of $23,600.[2] Teresa executed a "Release Of All Claims" which recited that it was "the intent of the parties not only to set at rest forever the differences between them, but also to release in full the claims of the undersigned against all persons, firms and corporations whomsoever." The release also contained the following:

> It is understood that this release is given in full and final satisfaction of the judgment rendered in the above case and that [Spicer Motors] may have a right of contribution from [Steve] and his insurance carriers. It is further understood that [Spicer Motors] is retaining that right of contribution and the right to pursue [Steve] and his insurance carriers.

Steve also executed a release that is set out in full below.[3] Significantly, as it re-

---

1. First Southern was the insurance carrier for Spicer Motors.

2. Note that the amount agreed upon to settle Steve's claims was more than the total of the judgments entered in his favor.

3.
> RELEASE OF ALL CLAIMS
> THIS IS A FULL RELEASE, NOT A LIMITED ONE; IT BEING THE INTENT OF THE PARTIES NOT ONLY TO SET AT REST FOREVER THE DIFFERENCES BETWEEN THEM, BUT ALSO TO RELEASE IN FULL THE CLAIMS OF THE UNDERSIGNED AGAINST ALL PERSONS, FIRMS AND CORPORATIONS WHOMSOEVER.
> FOR AND IN CONSIDERATION OF Twenty-three Thousand Six Hundred and No/100ths ($23,600.00) Dollars, receipt of which is hereby acknowledged, the undersigned, [Steve], on behalf of himself and for

lates to the issues in this case, the release signed by Steve did not contain the paragraph contained in Teresa's release providing that Spicer Motors had a right of contribution against Steve and his insurance carriers which it was retaining.

In August 1994, Spicer Motors and First Southern filed suit seeking contribution from Steve. They alleged that Steve was liable to Teresa for her damages and was a joint tort-feasor; that they were entitled to an apportionment of fault between Spicer Motors and Steve[4]; and that they were entitled to contribution from Steve in an amount equal to the percentage of fault apportioned to him.

Steve filed the motion for summary judgment, the court's ruling on which is the subject of this appeal. In that motion, Steve alleged that the settlement of his claim, and the taking of the complete release of all claims without reserving the right to make a claim against him for contribution, amounted to an accord and satisfaction of all claims of the parties to the settlement. By reason thereof, Steve contended that Spicer Motors was estopped from asserting the claim for contribution. The trial court sustained that motion, finding that the release was "intended

to be a release of all claims, a full release, not a limited one"; the release "clearly states that the intent of the release was to rest *forever* the differences between the parties"; that there is "an absence of words in the operative part of the release which would indicate an intention to limit or restrict the release's effect." The court concluded that "the release was contemplated and intended to be a complete settlement of all matters between [Spicer Motors and Steve]," and that Spicer Motors and First Southern were "estopped from denying its implied admission which was accepted by [Steve] in good faith." Spicer Motors and First Southern (hereafter referred to as "Appellants") appeal.

 Appellants contend, in three points relied on, that the trial court erred in sustaining the motion for summary judgment. A summary judgment is reviewed in the same manner as a court-tried or equity case and must be affirmed if, as a matter of law, the judgment is sustainable on any theory. *Boshers v. Humane Soc. of Missouri, Inc.*, 929 S.W.2d 250, 253 (Mo.App. S.D.1996). The purpose of a summary judgment is to permit the trial court to enter judgment where the moving party has demonstrated, on the

his heirs, executors, administrators and assigns, and for and on behalf of anyone claiming through or under them, hereby release, acquit, and forever discharge [Bailey] and [Spicer Motors], individually and severally, their heirs, executors, administrators and assigns, and all other persons, · firms and corporations whomsoever, of and from all claims, damages, demands, losses, causes of action and actions, whether known or unknown, and whether accrued or accruing, which the undersigned ever had, now have or otherwise might have hereafter on account of (a) an accident occurring August 22, 1989 at the intersection of 32 nd Street and Indiana Avenue; (b) any bodily injury, property damage, medical expense, loss of wages, impairment of earning capacity, loss of consortium, or other loss whatsoever resulting or to result therefrom; and (c) any other consequence, matter or thing whatsoever connected with, flowing from, or arising out of the aforesaid occurrence.

IT IS AND IS HEREBY EXPRESSED TO BE THE INTENT OF THE UNDERSIGNED TO ACCEPT THE AFORESAID CONSIDERATION AS FULL SATISFACTION OF THE CLAIMS HEREIN AND HEREBY RELEASED.

The undersigned hereby acknowledges that the settlement hereby consummated reflects the compromise of a doubtful and disputed claim and agrees that the payment recited herein is not to be construed as an admission of liability on the part of any person herein or hereby released; liability being expressly denied by each of them, and that the payments recited herein is made solely to avoid further expenses connected with additional investigation and litigation.

[Spicer Motors] will pay all court costs of the action.

IN WITNESS WHEREOF, the undersigned have hereunto set his hand and seal this 14 day of April 1992.

4. They apparently did not rely on the apportionment of fault found in the earlier trial.

basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Our review is essentially de novo. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

■ In their first point, Appellants contend that the trial court erred in sustaining Steve's motion for summary judgment because their claim for contribution "is not barred by release given in good faith to one of two or more persons liable in tort for the same injury unless the terms of the release specifically provide that contribution is precluded in accordance with § 537.060 [5] and because a claim for contribution did not arise until after the release was signed by [Steve] and therefore the release could not act as a bar to the claim for contribution." As we interpret this point, Appellants contend that the summary judgment was improper, not because there was a genuine issue of material fact, but because Steve was not entitled to a judgment as a matter of law for the reasons stated.

The first portion of Appellants' point, relies on the applicability of § 537.060 which is set out in full below.[6] Appellants now argue that by reason of the verdict in Steve and Teresa's case, Steve was responsible for 20% of the verdict in favor of Teresa. They then argue that the "release signed by [Steve] did not provide that he, a joint tort feasor, was discharged from liability for the damages suffered by [Teresa] and cannot serve as a bar to recovering contribution from him."

We are not furnished with any of the pleadings filed in the suit by Teresa and Steve in which they sought compensation for their injuries and damages, and there is nothing in the record before us indicating that Teresa made a claim against Steve for her injuries.[7] We assume that the apportionment of fault reflected in the judgment entered on the jury verdict was

---

**5.** All references to statutes are to RSMo 1994 unless otherwise indicated.

**6.** Section 537.060: "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

**7.** Our Supreme Court abrogated the doctrine of interspousal immunity in negligence actions in 1986 in *S.A.V. v. K.G.V.*, 708 S.W.2d 651 (Mo. banc 1986). The accident in which Steve and Teresa were injured occurred in 1989.

the result of a request for such apportionment by Spicer Motors and its employee.[8]

■ Appellants argue that because of the provisions of § 537.060, the absence of language in the release signed by Steve indicating that he was also released precludes the release from being construed as adversely affecting Appellants' right to contribution. They cite *Greenstreet v. Rupert*, 795 S.W.2d 539, 541 (Mo.App. W.D. 1990) for the proposition that the intent of § 537.060 is to "preclude the unintended release of a nonsettling defendant." Of course, Steve was not a defendant in the claim for which contribution is now sought, but it is clear that an alleged tort-feasor need not be named by the claimant in the primary suit in order to be subject to a claim for contribution in a separate action. *See Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982).

The unique factual setting involved here is that Steve was a party to the release in question in that he released Appellants from any claims he had against them. Appellants now effectively contend that because the release did not identify Steve as a person also being released, § 537.060 prevents the release from affecting their claim for contribution against him. This contention is not well taken.

Our Supreme Court has said that § 537.060 permits alleged tort-feasors to buy their peace by good faith settlement with "the claimant." *Lowe v. Norfolk and Western Ry. Co.*, 753 S.W.2d 891, 892 (Mo. banc 1988). This is consistent with the provisions of § 537.060. That statute provides that when an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide. It also provides that such an agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. These provisions, fortified by the Supreme Court's acknowledgement that the statute is intended to permit settlements "with the claimant," indicate that the settlements covered by § 537.060 are those by the underlying claimant against one or more of the tort-feasors. There would be no reason to provide that such an agreement would not discharge other tort-feasors for the damage unless it was referring to a settlement with the claimant, because certainly tort-feasors could not, among themselves, reach settlements which could, in any way, affect a claimant's right to recover.[9] Likewise, if the statute applied to settlements with those other than the underlying claimants, it could be interpreted as permitting joint tort-feasors to settle among themselves and thereby affect the claims of other tort-feasors for contribution, a result that could not have been intended.

We are not persuaded that § 537.060 applies to a release, such as the one at issue here, so that it had the effect of reserving a contribution claim to the party being released by failing to specifically provide that the releasing party was not discharged from that claim. This portion of Appellants' point is without merit.

Appellants also contend that the release could not have had the effect of releasing Steve from the contribution claim, because

---

8. Parenthetically, we note that the fact that some fault was apportioned to one of several plaintiffs in the damage suit does not necessarily mean that that party is a joint tort-feasor for purposes of contribution, or that the percentage of fault apportioned to that party is applicable in an action for contribution. *See Grundy Elec. Co-op., Inc. v. Washburn*, 855 S.W.2d 343 (Mo. banc 1993).

9. Appellants tacitly acknowledge that the releases or settlement agreements referred to in § 537.060 are those with a claimant by arguing that "[t]he release signed by [Steve] did not provide that he, a joint tort feasor, was discharged from liability for the damages suffered by [Teresa] and cannot serve as a bar to recovering contribution from him."

that claim was not in existence, and Steve was not obligated to Appellants "until after he executed the release and the judgment for [Teresa] was satisfied by [Appellants]." They cite no authority in support of that proposition other than *State ex rel. General Electric v. Gaertner,* 666 S.W.2d 764 (Mo. banc 1984), which they cite for the principle that a claim for contribution is separate and apart from the underlying tort action. It is true that the court in *General Electric* said that a cause of action asserted by a third party plaintiff, whether based on contribution, indemnification or some other theory of recovery, is separate and distinct from the tort claim asserted by the plaintiff against the defendant. *Id.* at 766. It also said that virtually all jurisdictions hold that the third party plaintiff's claim arises at the time the defendant in the original suit pays more than his or her proportionate share of an adverse judgment, but that does not mean that the third party action is barred until the defendant pays more than his or her proportionate share. *Id.* In *General Electric,* the issue was whether a defendant could maintain a third party action for contribution against a third party defendant after the statute of limitations had expired on the claim asserted by the original plaintiff.

Even if a viable argument could be made that no cause of action for contribution existed which could be released until Teresa's settlement was paid, an issue which we need not and do not address, Appellants, however, provide no reference to the record in this case indicating that Teresa's settlement was, in fact, paid after that of Steve. Both the release of Teresa and the one signed by Steve were dated April 14, 1992. We are cited to nothing that would support an argument that Steve's release was signed before the settlement was paid to Teresa. Rule 81.12(a) [10] provides that the record on appeal "shall contain all of the record, proceedings and evidence nec-

essary to the determination of all questions to be presented...." Under this rule the appellant must file a transcript and prepare a legal file so that the record contains all the evidence necessary for a determination of questions presented to the appellate court for a decision. *Environmental Quality Research, Inc. v. Mercantile Trust Nat'l Ass'n,* 854 S.W.2d 500, 501 (Mo.App. E.D.1993). Accordingly, the first point is without merit and is denied.

As we interpret Appellants' second point, they contend that the trial court erred in granting the summary judgment because, in doing so, it relied on cases that were factually distinguishable. This relates to the trial court's conclusion that Appellants are estopped from maintaining their claim for contribution because the release signed by Steve was a full release of all claims, and it did not contain language limiting or restricting its effect.

In support of his motion for summary judgment, Steve relied on a number of cases for the proposition that a release has the effect of preventing the party released from bringing a later action against the releasing party unless the release includes language indicating that the release is to have a limited effect. Those cases included *Lugena v. Hanna,* 420 S.W.2d 335 (Mo.1967); *Farmer v. Arnold,* 371 S.W.2d 265 (Mo.1963); *Eberting v. Skinner,* 364 S.W.2d 829 (Mo.App.Spfd.1963); *England v. Yellow Transit Co.,* 240 Mo. App. 968, 225 S.W.2d 366 (Spfd.1949). In *Lugena,* the plaintiff in a personal injury action had obtained a "Safety Responsibility Law Release" from defendant for filing with the Department of Revenue, and the question on appeal was whether, as a matter of law, plaintiff's obtaining the release constituted conduct which estopped him from later prosecuting a personal injury action against defendant. *Id.* at 338. The court held that the release was a general release, there was nothing to indicate that

---

**10.** All rule references are to Missouri Rules of Civil Procedure (1999) unless otherwise indi-

cated.

defendant had intended to authorize a later claim by plaintiff, and "[i]n the absence of words in the operative part of a general release which indicate an intention to limit or restrict its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties to the release." *Id.* at 340–41. The court said that similar results had occurred in *Farmer* and *Eberting*, and noted that in *England*, defendant was held to be estopped to pursue its counterclaim after obtaining a release from plaintiff. *Id.* at 339–340. Appellants argue that these cases do not apply to the instant case because here the claim is for contribution and not for personal injuries or property damage. They cite no authorities, however, for the principle that the effect given to a general release in the cases cited above is different with reference to a claim for contribution.

In *Sexton v. First Nat'l Mercantile Bank,* 713 S.W.2d 30, 31 (Mo.App. S.D. 1986), we noted that *England* and *Eberting,* as well as most other cases discussing estoppel flowing from a release without an express reservation of rights, involved automobile collisions. We said, however, that "no reason is advanced or known to us why this principle should not be applicable to a document settling debts, security interests, and other financial matters." *Id.*

In *Heitz v. Champagne,* 839 S.W.2d 700, 703 (Mo.App. S.D.1992), we noted the above language from *Sexton* and applied the same principals in affirming a summary judgment. In *Heitz,* defendants had earlier sued plaintiff and others for fraud in connection with a real estate transaction. That case was settled by way of a general release that named plaintiff, and which contained no language reserving any rights to plaintiff to bring a subsequent action against defendant. When plaintiff filed suit for malicious prosecution and breach of contract, defendant filed a motion for summary judgment based on the same theory of estoppel applied in *Lugena,*

*Farmer, Eberting* and *England.* We also noted in *Heitz* that the release signed by defendants contained no language of limitation that prevented its application to the claims attempted to be brought by plaintiff. *Id.* at 704. Although the claims for malicious prosecution and breach of contract filed by plaintiff in *Heitz* were different than the fraud claims filed by the defendants in the earlier case, and for which they released plaintiff, we held that the principle extracted from earlier cases and restated in *Sexton* was applicable there as well. *Id.* at 703.

In the instant case, the release signed by Steve in favor of Spicer Motors and its employee was, in all respects, a general release. It specifically provided that it was a "full release, not a limited one; it being the intent of the parties not only to set at rest forever the differences between them, but also to release in full the claims of [Steve] against all persons, firms and corporations whomsoever." It also provided that the payments made in consideration of the release were made to "avoid further expenses connected with additional investigation and litigation." The trial court did not err in entering the summary judgment as argued by Appellants in this point. Point denied.

In their final point on appeal, Appellants contend that there were genuine issues of fact that should have prevented entry of the summary judgment. Specifically, they argue that there were issues about the intent of the parties to the release to permit them to pursue Steve as a part of the total settlement. They also argue that the trial court should have considered extrinsic evidence about the "surrounding circumstances of the release in the event the court believed that the release barred contribution," and the trial court "was required to construe [the releases signed by Steve as well as Teresa] together so as to give them meaning and effect."

Appellants cite no authority in support of their point other than *Greenstreet,* 795 S.W.2d at 540, which they cite for the

proposition that "the burden of proving the invalidity of a settlement is on the party asserting the invalidity." Based on that authority, they argue that Steve "had the burden of proving the invalidity of settlement [sic] agreement." They do not, however, explain how that principle aids their cause here.

Under Rule 84.04(d) it is an appellant's obligation to cite appropriate and available precedent if he expects to prevail. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978). If no authority is available, an explanation should be made for the absence of citations. *Id.* Where, as here, appellants neither cite relevant authority nor explain why authority is not available, the appellate court may be justified in considering their points abandoned. *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo. App. S.D.1995). Point denied.

The judgment is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur